**Roy A. AYERS, Appellant,**

v.

**Gail MITCHELL, Appellee.**

**No. 06–04–00088–CV.**

Court of Appeals of Texas, Texarkana.

Submitted June 16, 2005.

Decided July 12, 2005.

Rehearing Overruled Aug. 16, 2005.

Troy A. Hornsby, Miller, James, Miller & Hornsby, LLP, Texarkana, for appellant.

John R. Mercy, Mercy, Carter & Tidwell, LLP, Texarkana, John W. Alexander, Alexander and Hammonds, LLP, Winnsboro, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Roy A. Ayers and his wife, Lorayne, deposited funds in an account at a bank where they, along with two of their children, Gail Mitchell and Larry Ayers, were signatories on the account. Mitchell eventually gained sole control over the funds. Roy[1] testified that he demanded a return of the funds. When Mitchell refused, Roy filed suit against her, alleging, among other things, breach of contract, conversion, breach of fiduciary duty, and fraud. Roy also sued for "a declaratory judgment that all monies in issue are owned by Roy A. Ayers and should be returned to Roy A. Ayers." Mitchell counterclaimed, seeking a declaratory judgment as to the existence of a trust, terms of the trust, and her status as trustee. The funds at issue were ultimately deposited in the registry of the court.

The case was tried to the court and resulted in a judgment that Roy take nothing by his suit, that the funds at issue were held in an irrevocable trust for the benefit of Roy, and that Mitchell was the sole trustee of that trust. The court filed findings of fact and conclusions of law in support of its judgment. Roy appeals, challenging the material findings and conclusions made by the court. Because we hold the trial court erred in finding the existence of a valid trust, we reverse and render judgment that Roy is entitled to have the funds returned to him. We remand to the trial court the question of Roy's reasonable and necessary attorney's fees.

## Background

In 1998, Roy and Lorayne became concerned about their future health and living care needs. According to Mitchell's testimony, her parents asked her to take charge of their life savings to provide for their future healthcare needs. She said that her parents wanted to "shelter [these funds] ... from Medicaid." So, on December 18, 1998, Roy and Lorayne created a savings account at a bank in Winnsboro, depositing approximately $48,000.00. There were four signatories on the account: Roy, Lorayne, Mitchell, and Larry. Mitchell's social security number was shown on the account, and she paid the taxes on the income from the account. Mitchell testified Roy instructed her to keep her siblings from misusing any of this money. Mitchell's siblings are: Larry, Marsha Kull, and Paul Ayers.

Lorayne died sometime after the creation of the savings account.[2] In January 2003, Roy had surgery to amputate one of his legs. Following Roy's surgery, Mitchell and Kull broached the subject of Roy living in a nursing home. Larry was opposed to this idea and took Roy home to live with him. Larry testified he "gutted" his home and did significant remodeling to make the home accessible for Roy. There

---

1. Because of the common last name, Roy, Lorayne, and Larry are referred to by their first names.

2. The trial court's findings of fact and Mitchell's pleadings state that Lorayne died in 2000, but we have been unable to locate any indication of this date any other place in the record. Roy testified that Lorayne's death was about three years before trial; the trial was held in April 2004.

was also testimony that Larry isolated Roy from the rest of the family. Larry, a single person, hired care providers to come into the house to help with Roy's needs and with the cooking and other household chores. One caregiver testified it was her understanding from the other caregivers that Roy was not to be left alone with other members of the family. Jeff Ayers, Larry's son, testified Larry told him not to associate with Mitchell or Kull, or any of their children. Jeff also testified that Larry had coached Roy on how to answer questions in court.

In June 2003, Mitchell became aware that Larry had been writing checks of increasing value on Roy's checking account (not the account the subject of this suit). Mitchell then removed the funds in question from the savings account and opened a new account, with herself and Kull as signatories. Kull's name was removed from the account, at her request, leaving Mitchell as the only signatory. Mitchell testified she viewed herself as trustee of these funds and felt responsible to protect the money and see to it that the money was used for Roy's reasonable medical needs and for his "comfortable living expenses."

**Trial Court's Findings and Conclusions**

In its written findings of fact, the trial court found, among other things, that the bank account in question did not reflect that Mitchell was a trustee; that Roy and Lorayne intended that Mitchell hold the account subject to their requirements for comfortable living and medical needs; that Roy, Lorayne, Mitchell, and Larry were permitted to withdraw from the account; that Larry exerted undue influence over Roy; that the only withdrawal from the account made by Mitchell was for the construction of a bridge requested by Roy; that Roy was disoriented on the day of trial; that Roy was unable to care for himself; that Roy and Lorayne intended to

completely divest themselves of any legal interests in the account in question; that Roy never made a demand on Mitchell for return of the account before filing suit; and that Roy and Lorayne intended for Mitchell to have complete control over the account subject only to their needs for healthcare and comfortable living.

In its conclusions of law, the trial court concluded that Mitchell is the trustee of the funds in the account in question; that the trust was intended to be irrevocable; that the trust became irrevocable on the death of Lorayne; that Roy is in need of a guardian; that, should any of the trust fund remain after the death of Roy, the trust terminates and the funds shall be paid out equally to the children of Roy and Lorayne; and that Roy and Lorayne intended to and did divest themselves of any interest in the trust fund except as beneficiaries thereof.

**Roy's Contentions**

Roy contends the evidence established as a matter of law that Roy revoked the trust, and that failing to so find was against the great weight and preponderance of the evidence. He also contends the evidence established that Roy and Lorayne intended Larry and Mitchell to be joint trustees, and failing to so find was likewise against the great weight and preponderance of the evidence. Roy further contends the trial court erred in enforcing an oral trust and in ordering the trust *res* be divided equally among Roy's children following his death. Finally, Roy contends the trial court should have awarded him attorney's fees.

**Standards of Review**

Findings of fact in a case tried to the court have the same force and dignity as the findings made by a jury in its verdict. *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ.App.-Houston [14th Dist.] 1977, writ ref'd n.r.e.). Find-

ings of fact are not conclusive, however, when a complete reporter's record appears in the record. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.-Houston [14th Dist.]), *writ ref'd n.r.e.*, 699 S.W.2d 199 (Tex.1985).

In conducting a legal sufficiency review of a trial court's findings, the judgment will not be set aside if there is any evidence of a probative nature to support it. *Ray v. Farmers' State Bank*, 576 S.W.2d 607, 609 (Tex.1979) (citing *Cavanaugh v. Davis*, 149 Tex. 573, 235 S.W.2d 972 (1951)). An appellate court cannot substitute its own findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings. *Id.*

In reviewing the trial court's findings for factual sufficiency, we consider all the evidence in the record, including any contrary to the trial court's judgment. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). The trial court's findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

A trial court's conclusions of law are reviewed de novo. *In re Humphreys*, 880 S.W.2d 402, 404 (Tex.1994).

**Evidence of Oral Trust Not Legally Sufficient**

■ We begin our analysis with Roy's contention the trial court erred in enforcing an oral trust. In general, a trust must be in writing to be enforceable. TEX. PROP. CODE ANN. § 112.004 (Vernon 1995). That statute requires a trust in either real or personal property to be created with a written document. However, a trust in personal property may be created, and the trust enforced, where there is a) a transfer of the trust property; b) to a trustee; c) who is neither settlor; d) nor beneficiary; e) if the transferor expresses at the time or before the transfer his or her *intent to* create a trust. TEX. PROP.CODE ANN. § 112.004(1). A trust meeting these requirements need not be in writing.

Mitchell contends, and the trial court found, that Roy, as settlor, transferred the funds in question to her as trustee. The Texas Property Code defines "beneficiary" as "a person for whose benefit property is held in trust, regardless of the nature of the interest." TEX. PROP.CODE ANN. § 111.004 (Vernon Supp.2004–2005). Mitchell does not contend, and the evidence does not show, that Mitchell is a beneficiary of the alleged trust. The evidence does show that, at the time or before the bank account in question was created, Roy made statements to Mitchell consistent with creating a trust. Fatal to Mitchell's contention that an oral trust was established, however, is the absence of a complete transfer of the alleged trust property.

As it pertains to trusts, the Texas Property Code does not contain a definition of "transfer." *See* TEX. PROP.CODE ANN. § 111.004. However, in a case construing, in part, certain bank savings accounts opened by the account holder "in trust" for others, the Texas Supreme Court held that such trusts are governed in general by the rules applicable to gifts and explained that:

The principal difference between such a trust and a gift lies in the fact that in the case of a gift the thing given passes to the donee, while in the case of a voluntary trust only the equitable or beneficial title passes to the cestui qui trust. In each case the equitable title must pass immediately and unconditionally and the transfer thereof must be so complete that the donee might maintain an action for the conversion of the property. Absent a completed gift of the equitable title, no trust is created, for an

imperfect gift will not be enforced as a trust merely because of its imperfection.

. . . .

"But the peculiarity with respect to these so-called 'savings bank trusts' is that the courts require that the declarant shall express his intent to create a trust more clearly and by a larger number of acts than in the case of an ordinary trust. The deposit of money in a bank under a trust title is considered equivocal. Men frequently deposit money under a trust title from other motives than that of creating a trust."

*Fleck v. Baldwin,* 141 Tex. 340, 172 S.W.2d 975, 978 (1943) (holding insufficient evidence of trust creation, particularly, lack of evidence of original owner's intent to yield control over funds in question).

More recently, the Eastland Court of Appeals held that the intent of the donor is the principal issue in determining whether a gift has been made. *Hayes v. Rinehart,* 65 S.W.3d 286, 289 (Tex.App.-Eastland 2001, no pet.). That case was one brought by the testator's son seeking, in part, a determination that funds in a certificate of deposit (CD) account in the name of the testator's daughter were property of the estate, not a gift to the daughter. Part of the court's consideration in upholding the trial court's finding that there was no transfer of the funds by gift was the fact that the testator had used money from another CD account to purchase a pickup truck after also placing that CD account in the daughter's name. *Id.* Significantly, the court also noted that the testator had, similar to the instant case, placed the CD account in his daughter's name to be eligible for Medicare and Medicaid benefits. *Id.*

In another case, a mother put a CD in her name and in the name of her children, and the children asserted that this act constituted a gift as a matter of law. In rejecting the children's contention, the Dallas Court of Appeals held that, for a gift to be effective, delivery must divest the donor of all dominion and control over the gift. *McConathy v. McConathy,* No. 05-95-01036-CV, 1997 WL 145172, *3-4 (Tex.App.-Dallas Apr. 1, 1997, pet. denied), 1997 Tex.App. LEXIS 1592, at *9-11 (not designated for publication). The court, noting that the mother, as a joint account holder of the CD, had the authority to dispose of the CD without the children's consent, further stated:

> [The mother's] placing [the children's] names on the CD did not divest her of all dominion and control over the CD or immediately and unconditionally vest [the children] with ownership of the CD. Thus, [the mother's] action of having [the children's] names placed on the CD account with her own name did not establish present donative intent and delivery as a matter of law.

*Id.* 1997 WL 145172 at *4, at *11.

■ Applying these principles applicable to gifts, we hold that, to have a "transfer of the trust property to a trustee," as contemplated by Section 112.004(1), the transfer must divest the trustor of all dominion and control over the trust *res.*

In the instant case, there is evidence that, at or before the time the funds in question were placed in the savings account, Roy and Lorayne instructed Mitchell to take charge of such funds to provide for their future healthcare needs. Further, Roy's niece, Irene Ayers (daughter of Roy's brother) testified Roy told her that Mitchell was in charge of Roy's finances. However, the evidence further shows that neither Roy nor Lorayne ever divested themselves of all dominion and control over these funds. They both remained as signatories on the account where the funds were located. As such, they expressed their intent to retain control over such funds. It is axiomatic that, when an order

to pay from an account has been signed by an authorized signer on the account, the order is to be paid. *See* TEX. BUS. & COM. CODE ANN. § 4.401(a) (Vernon 2002) (bank may charge account for amount of item "properly payable") and § 4.402(b) (Vernon 2002) (bank that refuses to pay item "properly payable" may be liable for wrongful dishonor). Roy and Lorayne remaining as signatories on the account defeats any claim that the funds in that account were transferred away from them.

Roy's continued control over the account is also shown by Mitchell's own testimony that her father instructed her to deduct $2,425.00 from the account to reimburse Mitchell for the cost of a bridge she had built on Roy's property. Roy's authorization of this expenditure shows his continued control over these funds and is inconsistent with the view that a complete transfer of those funds away from himself ever took place. Roy's continued control of the funds is also shown by evidence that he made one or more loans to Larry from those funds.

The undisputed evidence shows that Roy had control over these funds until Mitchell moved them, without Roy's knowledge or consent, into an account where she had sole control. We hold, as a matter of law, there was never a "transfer of the trust property to a trustee" as contemplated by Section 112.004(1). In the absence of a writing representing the creation of a trust, and in the further absence of a complete transfer of the funds, we hold that, as a matter of law, no valid trust was created. Accordingly, we sustain Roy's point that the trial court erred in enforcing an oral trust.

### Any Trust Created Was Revocable

■ Notwithstanding our conclusion that no valid trust was created, we will address Roy's contention that the evidence established, as a matter of law, that Roy revoked any trust created and that the trial court's failure to so find was against the great weight and preponderance of the evidence. Even if a valid trust had been created, we hold that, as a matter of law, any such trust was revocable and that it was revoked by Roy.

■ The trial court found the alleged trust to be irrevocable. That finding, however, is not supported by the evidence and is contrary to law. Trusts created under Texas law are revocable, unless made specifically irrevocable. *Westerfeld v. Huckaby*, 462 S.W.2d 324, 327 (Tex.Civ.App.-Houston [1st Dist.] 1970), *aff'd*, 474 S.W.2d 189 (Tex.1971). The irrevocability of a trust must appear from the terms and language of the instrument creating the trust. TEX. PROP.CODE ANN. § 112.051(a) (Vernon 1995). Otherwise, the trust is revocable. *See* TEX. PROP.CODE ANN. § 112.051(a), (b) (Vernon 1995). Here, there was no written document establishing the trust and stating its purposes, duration, or whether it was revocable. The alleged oral trust was, as a matter of law, revocable.

Mitchell contends, and the trial court concluded, that the supposed trust was intended to be irrevocable and became irrevocable when Lorayne died. Mitchell cites *Citizens Nat'l Bank v. Allen*, 575 S.W.2d 654, 658 (Tex.Civ.App.-Eastland 1978, writ ref'd n.r.e.), in support of her position that a trust becomes irrevocable on the death of the trustor. That case, however, dealt with only one settlor, and the Eastland court qualified its holding with the following language:

[W]hen a valid inter vivos revocable trust is established and not revoked during the lifetime of the trustor, it becomes irrevocable upon his death, *and there being no other unfulfilled purposes of the trust expressed,* the trust

terminates and is enforceable by the beneficiary.

*Id.* (Emphasis added.)

█ Obviously, where there is only one settlor of a trust, and he or she dies, that settlor is no longer capable of revoking the trust and, there being no other purpose, the trust becomes irrevocable. Where, however, there are multiple settlors, and one dies, but there are purposes of the trust yet unfulfilled, such trust does not become irrevocable on the death of one settlor. That is the situation here. Any trust that existed did not become irrevocable at Lorayne's death, because Roy survived Lorayne and at least part of the trust's purpose—providing for Roy's healthcare needs—remained unfulfilled. Further, none of the evidence showed that Ray and Lorayne intended the alleged trust to be irrevocable. We hold, therefore, that, even if a valid trust was created, it was revocable as a matter of law.

█ We also hold that, as a matter of law, Roy revoked any such trust. In so holding, we recognize the testimony on this issue was conflicting. Roy testified he made demand on Mitchell for return of the funds. Mitchell testified Roy did not request a return of the funds. The trial court, believing Mitchell and disbelieving Roy, found that Roy never made a demand on Mitchell for a return of the funds before filing suit. The trial court further found that Roy was "disoriented" at the time of trial and that he was incapable of managing his financial affairs. The trial court concluded, as a matter of law, Roy was in need of a guardian.

The trial court, as fact-finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. As such, it was the court's prerogative to believe Mitchell's testimony and disbelieve Roy's. However, the issue of guardianship was not before the court. Indeed, the trial of this cause was abated pending a judicial determination of Roy's need for a guardian by a district court in Titus County. The application for such guardianship (filed by Kull) was denied December 11, 2003. This case was reinstated April 8, 2004, and went to trial April 30, 2004. The trial court also found that Larry exerted undue influence over Roy, but that finding is not linked to any specific conduct by Larry or Roy, and the effect of that finding is not stated.

Aside from the conflict in the testimony concerning whether Roy revoked the alleged trust, Roy contends, and we agree, that the act of filing suit was itself a demand by Roy for a return of the funds and a revocation of the alleged trust. We find it significant that the trial court, in its finding that Roy never made a demand on Mitchell for a return of the funds, limited its finding to the period "before filing suit." Further, Roy's testimony at trial made it unmistakably clear he was demanding a return of his funds. We hold that, even if Roy's funds were held in trust, as a matter of law, he revoked that trust by his act of filing suit and by his testimony at trial that he was demanding a return of his funds. The trial court's failure to so find was against the great weight and preponderance of the evidence.

## Attorney's Fees

█ Roy's last point of error asserts he would be entitled to recover his attorney's fees in this action under TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). Roy sued for "a declaratory judgment that all monies in issue are owned by Roy A. Ayers and should be returned to Roy A. Ayers." Having sustained that contention, we agree that Roy is entitled to his reasonable and necessary attorney's fees as are equitable and just.

## Summary and Conclusion

Because we hold that no valid trust was created in this case and that, even if such

trust was created, it was, as a matter of law, a revocable trust and was revoked, we find it unnecessary to address Roy's other points of error.

We reverse and render judgment that Roy owns all the funds in issue and that such funds should be immediately returned to him. We remand to the trial court the determination of Roy's reasonable and necessary attorney's fees under Section 37.009 of the Texas Civil Practice and Remedies Code.