In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00106-CV


______________________________




MIKE DUDDLESTEN AND GLORIA DUDDLESTEN 


D/B/A A TOUCH OF CLASS, Appellants


V.



CHRISTINE KLEMM, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 05C0945-202




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Certain antique dolls are extremely valuable to collectors. This case involves a dispute over
the agreement to sell such a doll. The determining issue in this case is whether a trial court can
award damages without a finding of liability on the part of a defendant; we hold it cannot. As a
result, the trial court's award of damages in the amount of $17,500.00 is reversed, and a take-nothing
judgment is rendered. 

I. Factual and Procedural Background

 While browsing through a December 2001 Antique Doll Collector magazine, collector
Christine Klemm discovered a picture of a Nineteenth Century French doll with bisque head
manufactured by Andre Thuiller, whose antique dolls are worth $35,000.00 to $120,000.00. Klemm
called sellers Gloria and Mike Duddlesten, who were doing business as A Touch of Class, to inquire
about the doll's condition. Klemm testified that she was assured that the doll was in original, perfect
condition and that it "was guaranteed to be free from major and minor flaws." She decided to
purchase the doll "sight unseen" because Gloria allegedly stated Klemm would receive a cash refund
if she did not approve of the doll after inspection. Klemm agreed to a $48,000.00 purchase price for
the doll and asked the Duddlestens to send her a layaway agreement with additional photographs of
the doll. 

 The layaway agreement described the doll as having a "perfect bisque head" and an original
kid body. The agreement required Klemm to pay a $12,000.00 down payment and monthly
payments of $1,500.00. The contract stated no refunds would be made on layaway items, but
guaranteed the bisque had "NO DAMAGE OR REPAIR UNLESS OTHERWISE DESCRIBED TO
BUYER." Klemm received the layaway agreement, noted it did not reflect the return policy, but
testified that she was assured by Gloria not to "worry about it because she stood behind all her
merchandise." After reviewing the photographs, Klemm signed and returned the layaway agreement. 

 Klemm had made nine monthly payments when she decided to inspect the doll at a
convention in New Orleans. (1) During the inspection, Klemm allegedly saw several defects in the doll,
including warping on the left side of the head, evidence of a weak shoulder, exposure of the armature
wire, and missing paint on the right side of the doll's face. Klemm also believed the neck attachment
had been replaced. The expert report of Pamela Farr, produced by the Duddlestens, either negated
Klemm's alleged damage or stated found flaws were minor and did not detract in the doll's value. 
At the convention, Klemm informed Gloria she did not want to purchase the doll. 

 By that time, Klemm had paid $25,000.00 toward the purchase of the doll. Gloria claimed
that the return would result in a twenty-percent restocking fee, but negotiations resulted in a reduced
fifteen-percent rate. (2) Klemm and Gloria entered into a credit memo, which allowed Klemm the
remaining balance of $17,500.00 in store credit "to be used toward purchase of dolls in stock for up
to 13 months." (3) 

 Klemm failed to use the credit and instead chose to initiate suit in Illinois. After the Illinois
litigation was dismissed, Klemm filed suit in Bowie County alleging several Deceptive Trade
Practices Act (DTPA) violations, breaches of implied and express warranty, false representation, and
unconscionable conduct. See Tex. Bus. & Com. Code Ann. §§ 17.46, 17.50 (Vernon Supp. 2008). 
She also sought the remedy of rescission. Post-trial, the court sent a letter to the parties in which it
held the credit memo was the controlling document in the litigation, that there were no DTPA
violations, no misrepresentations, or breaches of warranty because "the Defendants did more than
was required." The trial court's letter further stated that the letter would "act as the Court's Findings
of Facts and Conclusions of Law."

 Despite the findings and conclusions by the trial court, it awarded Klemm $17,500.00 as an
"equitable remedy," (4) which the Duddlestens now appeal. 

II. Trial Court Letter as Findings of Fact and Conclusions of Law

 The Duddlestens first question whether the letter written by the trial court constituted its
findings of fact and conclusions of law and suggest that this Court remand the case to the trial court
if it is necessary to enter more formal findings and conclusions. (5) There is some authority that a trial
court's prejudgment letter may not serve as findings of fact and conclusions of law. See Cherokee
Water Co. v. Gregg County Appraisal Dist., 801 S.W.2d 872, 877 (Tex. 1990). Cherokee Water
concluded that a letter written before judgment did not constitute formal findings of fact, especially
since other formal findings of fact and conclusions of law were subsequently filed. Cherokee Water
has been distinguished in cases where a prejudgment letter expresses the trial court's intent for
appellate courts to rely on the letter ruling as the basis for its decision, where no other formal
findings are entered. See Kendrick v. Garcia, 171 S.W.3d 698, 702 (Tex. App.--Eastland 2005, pet.
denied). 

 This case is similar to the Kendrick case where the Eastland court distinguished Cherokee
Water. In Kendrick, just as here, the trial court had specifically stated the letter expressed its
findings and conclusions and did not enter further findings and conclusions. Based on these
differences with Cherokee Water, we conclude, as did the Eastland court, that the letter served to
establish the trial court's findings of fact and conclusions of law. 

 It also has been held that findings of fact and conclusions of law need not be in any particular
form. Villa Nova Resort, Inc. v. State, 711 S.W.2d 120, 124 (Tex. App.--Corpus Christi 1986, no
writ) (trial court's letter can be considered findings of fact and conclusions of law). As long as they
are in writing and filed with the clerk, they "shall be part of the record." Id.; see Tex. R. Civ. P. 297. 
Thus, "[a] trial court's findings of fact and conclusions of law may be contained in a letter to the
respective attorneys, as long as the letter is filed of record," such as in this case. Rose v. Woodworth,
No. 04-08-00382-CV, 2009 WL 97256, at *1 (Tex. App.--San Antonio Jan. 14, 2009, no pet. h.). 
Here, the trial court specifically stated the letter set out the findings of fact and conclusions of law,
the letter was filed with the clerk, and the court did not enter other findings or conclusions. While
we do not hold that every letter written by a trial court to the attorneys will qualify, the facts of this
case authorize us to consider the trial court's letter as its findings of fact and conclusions of law. 

 "Findings of fact in a case tried to the court have the same force and dignity as the findings
made by a jury in its verdict." Ayers v. Mitchell, 167 S.W.3d 924, 927 (Tex. App.--Texarkana 2005,
no pet.). They are binding on an appellate court unless the contrary is established as a matter of law,
or if there is no evidence to support the finding. McGalliard v. Kuhlmann, 722 S.W.2d 694, 696
(Tex. 1986). Because we give deference to a trial court's discretionary resolution of factual issues,
we cannot substitute our findings of fact as long as there is any evidence in the record sufficient to
sustain the trial court's findings. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992); Ayers, 167
S.W.3d at 928. On the other hand, since a trial court has no discretion in determining what the law
is or applying the law to the facts, a trial court's conclusions of law are reviewed de novo. Walker,
827 S.W.2d at 841; Ayers, 167 S.W.3d at 928.

III. Findings and Conclusions of the Trial Court

 Klemm asserts the trial court failed to make any finding regarding an accord and satisfaction
of the original contract between the parties. We disagree. An accord and satisfaction exists when
the parties agree to discharge an existing obligation in a manner other than in accordance with the
terms of their original contract. Richardson v. Allstate Tex. Lloyd's, 235 S.W.3d 863, 865 (Tex.
App.--Dallas 2007, no pet.) (citing Avary v. Bank of Am., N.A., 72 S.W.3d 779, 788 (Tex.
App.--Dallas 2002, pet. denied)). The trial court specifically found that "It is undisputed that once
Plaintiff rescinded her purchase[,] the parties negotiated a new agreement on how the refund would
be handled." The trial court found "the original agreement no longer controls and the Court will only
consider the second agreement." Based on these findings, we cannot presume the trial court found
there was no accord and satisfaction of the original agreement. 

 Next, Klemm argues that the trial court failed to make any finding on the issue of
unconscionable conduct and, therefore, we must presume the finding was made in its favor to
support the judgment. An "unconscionable action or course of action" is defined as "an act or
practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability,
experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann.
§ 17.45(5) (Vernon Supp. 2008). Klemm pled that the transaction involved unconscionable conduct
and that such conduct violated Article 17.50(a)(3) of the DTPA. See Tex. Bus. & Com. Code Ann.
art. 17.50(a)(3) (Vernon Supp. 2008). The trial court specifically found that there was no violation
of the DTPA in this case, which necessarily included a finding that there was no unconscionable
conduct. Further, the evidence at trial supports this conclusion. Klemm was an experienced antique
doll collector and business owner who estimated her doll collection was worth $550,000.00. The
trial court found that the Duddlestens had done "more than was required" in this transaction. Based
on these facts, we cannot presume the trial court found the Duddlestens engaged in unconscionable
conduct. 

 In analyzing this appeal, we will conduct a de novo review of the trial court's legal conclusion
that Klemm was entitled to a damage award without a predicate liability finding against the
Duddlestens. 

IV. Damages May Not Be Awarded Absent a Finding of Liability

 "It is well established in Texas that no recovery is allowed unless liability has been
established." Fire Ins. Exch. v. Sullivan, 192 S.W.3d 99, 107 (Tex. App.--Houston [14th Dist.]
2006, pet. denied) (citing Mitchell v. Bank of Am., N.A., 156 S.W.3d 622, 627 (Tex. App.--Dallas
2004, pet. denied)); see also J. Schindler, II v. Austwell Farmers Coop., 841 S.W.2d 853, 854 (Tex.
1992). Damage findings in the absence of liability findings are immaterial. Sullivan, 192 S.W.3d
at 107; Basic Capital Mgmt. v. Dynex Commercial, Inc., 254 S.W.3d 508, 513 (Tex. App.--Dallas
2008, no pet. h.). 

 The trial court found Klemm failed to meet her burden of proof on the causes of action
against the Duddlestens pled in her petition. Thus, the trial court's award of damages in the absence
of a liability finding was an abuse of discretion. (6) 

V. Conclusion 

 We reverse the trial court's judgment awarding Klemm $17,500.00 and render a take-nothing
judgment against Klemm.




 Jack Carter

 Justice


Date Submitted: March 12, 2009

Date Decided: March 13, 2009

1. The last monthly payment made by Klemm was reduced by agreement to $1,000.00. 
2. The restocking fee was a point of contention at trial. Klemm argued that the layaway
contract failed to mention a restocking fee, while the Duddlestens argued the return policy, including
a twenty-percent restocking fee, was clearly mentioned on their website. In any event, the trial court
resolved the issue in favor of the Duddlestens since the layaway contract also stated there were no
refunds on layaway items. 
3. The Duddlestens contend that the credit memo was an accord and satisfaction barring
Klemm's recovery. In finding the credit memo controlled, the trial court determined it discharged
the obligations in the layaway agreement. However, the Duddlestens' argument does not address
claims that Klemm may have had involving the credit memo itself. 
4. The trial court also commented on the credit memo by stating, "While it is undisputed, [the
credit] was not used within the time period, there is evidence Plaintiff started legal proceedings to
recover all the money paid to Defendants." Klemm argues her "performance was excused by the
court because supervening circumstance made performance impossible." Klemm is suggesting the
trial court applied a concept which excuses performance in a breach of contract case in order to
excuse her failure to exercise credit pursuant to the terms of the credit memo. See R.R. Comm'n of
Tex. v. Coppock, 215 S.W.3d 559, 566 (Tex. App.--Austin 2007, pet. denied); Malatt v. C & R
Refrigeration, 179 S.W.3d 152, 160 (Tex. App.--Tyler 2005, no pet.). Despite the fact that there
are no pleadings which would support such an argument, we note that Klemm's lawsuits did not
prevent her from exercising the credit within the thirteen-month time period. 
5. After judgment was issued by the trial court, the Duddlestens filed a request for findings of
fact and conclusions of law, later followed by a notice of past-due findings of fact and conclusions
of law. The trial court did not enter further findings or conclusions.
6. We also note the trial court gave Klemm an outright monetary award despite finding that the
credit memo allowing Klemm to use $17,500.00 in store credit for thirteen months was "final and
controlling." Rescission is an equitable remedy that may be granted on a number of grounds
including fraud, mistake, or breach of contract. Boyter v. MCR Constr. Co., 673 S.W.2d 938, 941
(Tex. App.--Dallas 1984, writ ref'd n.r.e.). The finding that the credit memo was controlling negates
any argument that the trial court sought to rescind the contract and restore the parties to their
respective positions as if no contract had existed.