

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00139-CV
_____

IN THE INTEREST OF S.A.E. AND M.B.E., CHILDREN

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 05D1748-CCL

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

The unsettling realities of the military reassignments of George S. Eastburn, IV, ultimately led to an order of the trial court modifying the custody of S.A.E. and M.B.E. and the exclusive right to designate their primary residence. That order, made the subject of this appeal by Eastburn, took that exclusive right from Eastburn, the children's father, and awarded it to Amanda Ward, their mother. The problem with that order, argues Eastburn, is that it was issued in violation of Section 156.102 of the Texas Family Code, since the order was not accompanied by the statutorily required finding that the children's present environment could endanger their physical health or significantly impair their emotional development. Ward argues that the statute does not apply here.

We hold that, while (1) Section 156.102 applies to this case, (2) the evidence is sufficient to support the jury's implied finding of endangerment as required by the statute. We, therefore, affirm the judgment of the trial court.

Eastburn and Ward were divorced July 25, 2006. In the divorce decree, they were appointed joint managing conservators of S.A.E. and M.B.E. Eastburn was granted the exclusive right to designate the primary residence of the children, restricted to South Carolina due to an upcoming move. Eastburn, who was on active military duty, was stationed in Georgia. By agreement, the parties modified the terms of possession outlined in the decree in order to accommodate Eastburn's schedule, and the children were regularly driven by Ward between South Carolina and Georgia. Eventually, this arrangement became unworkable. Ward was advised that the Texas trial court

2

would lose its jurisdiction unless she returned to Texas with the children before the expiration of six months from the date the divorce decree was signed. Eastburn was notified of Ward's plan to take the children while Ward was driving to Georgia with them. He hired a lawyer to file an emergency motion to prevent the move. Ward and Eastburn met at a police station in Georgia to determine who was entitled to legal possession of the children at that particular moment. Ward clandestinely left the police station with the children and drove to Texas.

On January 23, 2007, Ward filed a petition to modify the parent-child relationship because the "circumstances of the children, a conservator, or other party affected by the order to be modified [had] materially and substantially changed." Correctly noting that "[t]his suit to modify the designation of the person having the right to designate the primary residence of the children [was] filed within one year," Ward included an affidavit attempting to meet the requirements of Section 156.102 of the Texas Family Code.

A default order was entered April 30, 2007, but was later set aside. Temporary possession orders were entered July 9, 2007, and the trial court indicated it would hear Ward's petition August 29, 2007. During this hearing, the trial court heard highly conflicting testimony from Eastburn and Ward about their respective parenting skills and the effects on S.A.E. and M.B.E. At the conclusion of the hearing, the trial court requested the parties to brief the issue of whether Section 156.101 or 156.102 governed the dispute. No ruling on this issue was made, and nothing further was done in the case until the trial court again heard the matter, on August 20, 2008, almost

3

a year after the first hearing. After hearing evidence regarding the parties' changed circumstances, the trial court determined that modification was in the best interest of the children, appointed Ward and Eastburn joint managing conservators, and awarded Ward the exclusive right to determine the children's primary residence. The trial court did not expressly find that the children's present circumstances endangered their physical or impaired their emotional well-being, yet no one requested that the trial court make findings of fact and conclusions of law.

Eastburn now alleges the trial court erred in failing to apply Section 156.102. He also claims that the evidence was insufficient to support the trial court's judgment and that the court violated state and federal policy "against rewarding a parent who kidnaps children" when modifying the order.

We review de novo the trial court's conclusion of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Ayers v. Mitchell*, 167 S.W.3d 924, 928 (Tex. App.—Texarkana 2005, no pet.). However, because trial courts have broad discretion to determine what is in a child's best interest, we review a trial court's decision regarding child custody, control, and possession matters for clear abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re L.M.M.*, No. 03-04-00452-CV, 2005 WL 2094758, at *3 (Tex. App.—Austin Aug. 31, 2005, no pet.) (mem. op.); *In re P.M.B.*, 2 S.W.3d 618, 621 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Voros v. Turnage*, 856 S.W.2d 759, 761 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

4

A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000); *Holtzman v. Holtzman*, 993 S.W.2d 729, 734 (Tex. App.—Texarkana 1999, pet. denied). The fact that a trial court may decide a matter within its discretionary authority differently than the reviewing court in similar circumstances does not establish an abuse of discretion. *Holtzman*, 993 S.W.2d at 734 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985)). As long as some evidence of a substantive and probative nature exists to support the trial court's decision, we will not substitute our judgment for that of the trial court. *L.M.M.*, 2005 WL 2094758, at *3; *In re C.R.O.*, 96 S.W.3d 442, 447 (Tex. App.—Amarillo 2002, pet. denied).

Under the abuse-of-discretion standard, alleged legal insufficiency and factual insufficiency of the evidence are not independent grounds of error, but are merely factors in assessing whether the trial court abused its discretion. *L.M.M.*, 2005 WL 2094758, at *14; *In re J.H.W.*, No. 14-03-00024-CV, 2004 WL 1263254, at *2 (Tex. App.—Houston [14th Dist.] June 10, 2004, no pet.) (mem. op.); *In re Ferguson*, 927 S.W.2d 766, 769 (Tex. App.—Texarkana 1996, no writ). Where a sufficiency review "overlaps the abuse of discretion standard . . . we engage in a two-pronged inquiry." *Giron v. Gonzalez*, 247 S.W.3d 302, 306 (Tex. App.—El Paso 2007, no pet.). We ask if the trial court had sufficient information on which to exercise its discretion and whether it erred in its application of that discretion. *Id.*

Since Eastburn did not bear the burden of proof at trial, we analyze the legal sufficiency issue as a "no-evidence" challenge. *Id.* (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). We consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

In a factual sufficiency analysis, we consider all the evidence and set aside the findings only if they are so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust, shock the conscience, or clearly demonstrate bias. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986); *In re G.R.W.*, 191 S.W.3d 896, 899 (Tex. App.—Texarkana 2006, no pet.); *L.M.M.*, 2005 WL 2094758, at * 14.

*(1)     Section 156.102 Applies to this Case*

In the normal case, a trial court may modify an order in a suit affecting the parent-child relationship if it would be in the best interest of the child and the circumstances of the child or parents have materially and substantially changed since the date of the last modification order. TEX. FAM. CODE ANN. § 156.101(1) (Vernon 2008). Whether there has been a material and substantial change of circumstances is normally determined by an examination of the evidence occurring

6

between the date of the order or judgment sought to be modified and the date of the filing of the motion to modify. *In re C.L.L.*, No. 12-06-00007-CV, 2007 WL 2045241, at *4 (Tex. App.—Tyler July 18, 2007, no pet.) (mem. op.) (citing *Gibbs v. Greenwood*, 651 S.W.2d 377, 379 (Tex. App.—Austin 1983, no writ)).

But where, as has happened here, modification is based on an application filed within a year of the last conservatorship order, the trial court must also determine that the child's present environment may endanger the child's physical health or significantly impair the child's emotional development. *See* TEX. FAM. CODE ANN. § 156.102(a) (Vernon 2008); *J.H.W.*, 2004 WL 1263254, at *2.

Section 156.102 of the Texas Family Code, entitled "Modification of Exclusive Right to Determine Primary Residence of Child Within One Year of Order," states that if suit seeking to modify the designation of the person having the exclusive right to designate the primary residence of the child is filed within a year after the order, an affidavit with supporting facts must also be filed alleging at least one of the following:

> (1) that the child's present environment may endanger the child's physical health or significantly impair the child's emotional development;

> (2) that the person who has the exclusive right to designate the primary residence of the child is the person seeking or consenting to the modification and the modification is in the best interest of the child; or

> (3) that the person who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession

of the child for at least six months and the modification is in the best interest of the child.

TEX. FAM. CODE ANN. § 156.102(b) (Vernon 2008). If the trial court sets and hears the motion to modify, that is proof that the trial court regarded the affidavit as adequate. *C.L.L.*, 2007 WL 2045211, at *3; *In re J.K.B.*, 750 S.W.2d 367, 368 (Tex. App.—Beaumont 1988, no writ).

Ward argues that Section 156.102 does not apply because the trial court *heard* the matter outside of the one-year time frame. To aid her determination, she relies on two cases which she says stand for the proposition that "if the motion is not presented to the trial court within the one-year period following the initial custody order, such motion can then be set for hearing and a hearing can be had as if it were a motion to modify under any other relevant section of the Texas Family Code." *C.L.L.*, 2007 WL 2045241, at *3; *Jilek v. Chatman*, 613 S.W.2d 558, 559–60 (Tex. Civ. App.—Beaumont 1981, no writ). Both cases are distinguishable from the facts in this case.

The parties in *Jilek* were divorced as of June 19, 1978. *Jilek*, 613 S.W.2d at 558. The divorce decree named the mother the managing conservator for three months and the father managing conservator for the remainder of the year. *Id.* at 558–59. On June 7, 1978, just a few days inside of the one-year mark, the mother filed a motion to modify the decree. *Id.* at 559. The father also filed a motion to modify, but did so beyond the one-year mark. *Id.* By agreement, the parties consolidated the two motions and proceeded to a hearing on their competing motions. *Id.* Deciding that the predecessors to Section 156.101 governed instead of 156.102, the court held that in the absence of presentment of a motion to modify within the year, a finding under the heightened

8

emergency requirements of Section 156.102 was not required. *Id.* at 559–60. The court also noted consolidation of the motions, one of which was filed outside of the one-year mark, justified hearing the motion without following the requirements of Section 156.102. *Id.* at 560.

Similarly, in *In re C.L.L.*, the parties were divorced and were granted joint managing conservatorship of their child, with the mother having the exclusive right to determine the child's primary residence. 2007 WL 2045241, at *1. The father filed a motion to modify the divorce decree, and amended that motion, within the one-year mark. *Id.* He filed a second motion to modify the decree *after* one year had passed. *Id.* The trial court heard the matter, determined that modification was in the best interest of C.L.L. under Section 156.101, and gave the father the right to determine the child's primary residence. *Id.* The mother appealed, alleging that Section 156.102 should have governed the court's determination. *Id.* Our sister court cited the holding in *Jilek* and reasoned that since the father's third amended motion, which substituted and superseded the prior motions to modify, was filed more than one year after rendition of the decree, Section 156.102 did not apply. *Id.* at *3.

In our case, the divorce decree was entered July 25, 2006. Only one motion to modify was filed, that being on January 23, 2007, well within the one-year mark. Because a temporary order was entered July 9, 2007, sixteen days before the one-year mark, and a hearing on the motion was set for August 29, 2007, we know the motion was presented to the trial court within one year of the decree.

9

The court's delay in actually hearing the motion to modify in this case does not change the fact that this case was governed by the express requirements of Section 156.102.

This situation is governed by the plain meaning of Section 156.102(a), which expressly makes the filing of the motion within the one-year time frame the trigger for its application, and which fails to suggest that the timing of any subsequent hearing is of any importance in that application. *See* TEX. FAM. CODE ANN. § 156.102(a); *compare* TEX. FAM. CODE ANN. § 156.102(c) (Vernon 2008).

Section 156.102 applies to this dispute.

*(2)*     *The Evidence Is Sufficient to Support the Jury's Implied Finding of Endangerment*

Here, the trial court found the parties' circumstances had materially and substantially changed.[1] The trial court failed, however, to expressly make the required finding that the children's

---

[1]A few factors may have been involved in this finding of changed circumstances: (1) Eastburn and Ward had each remarried before the final hearing; (2) there was evidence by both parties that the other parent cursed around the children or restricted access to the children; (3) both parties had moved into different home surroundings with their new families; (4) there were allegations of mistreatment by both parents; and (5) both parents were alleged to be improper persons to exercise custody. A noncomprehensive list of material changes, as described by other courts, can include (1) marriage of one of the parties, (2) poisoning of the child's mind by one of the parties, (3) change in the home surroundings, (4) mistreatment of the child by a parent or stepparent, or (5) a parent's becoming an improper person to exercise custody. *In re A.L.E.*, 279 S.W.3d 424, 428–29 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *In re Marriage of Chandler*, 914 S.W.2d 252, 254 (Tex. App.—Amarillo 1996, no writ); *Wright v. Wright*, 610 S.W.2d 553, 555 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ)).

present environment endangered their physical health or significantly impaired their emotional development.[2]

Even though the trial court failed to explicitly make the required finding, because there were no findings of fact and conclusions of law filed in this case, "we must assume that [the trial court] made all findings in support of its judgment."[3] *Agraz v. Carnley*, 143 S.W.3d 547, 554 (Tex. App.—Dallas 2004, no pet.); *see also Heiskell v. Kendrick*, No. 14-06-00972-CV, 2007 WL 3072002, at *2 (Tex. App.—Houston [14th Dist.] Oct. 23, 2007, no pet.) (mem. op.) (implying finding that father's appointment as managing conservator would significantly impair physical health or emotional well-being of children); *In re A.A.M.*, No. 14-05-00740-CV, 2007 WL 1558701, at n.3 (Tex. App.—Houston [14th Dist.] May 31, 2007, no pet.) (mem. op.) (implying findings that children's stay with mother had detrimental effect on their emotional welfare); *Baker v. Peterson*,

---

[2]Completed home studies resulted in testimony that both parents were good parents, had excellent parenting skills, and that the children were not in danger while they were in Eastburn's possession.

[3]Findings of fact "shall not be recited in a judgment," but are required to be filed separately. TEX. R. CIV. P. 299a. "The legislature made it clear in enacting the family code that, unless expressly provided otherwise, suits affecting the parent-child relationship are to be governed by the same rules of procedure as those generally applied to other civil cases." *In re E.A.C.*, 162 S.W.3d 438, 442 (Tex. App.—Dallas 2005, no pet.) (citing TEX. FAM. CODE ANN. § 109.002(a) (Vernon 2008)). "In the absence of a requirement that specific findings of fact be included in the trial court's order, findings included in a judgment cannot form the basis of a claim on appeal." *A.A.M.*, 2007 WL 1558701, at n.3 (citing *Frommer v. Frommer*, 981 S.W.2d 811, 813–14 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd)).

No. 10-02-00113-CV, 2004 WL 756622, at *2 (Tex. App.—Waco Apr. 7, 2004, no pet.) (mem. op.) (quoting *Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex. 1996)).

Eastburn may, however, challenge the legal and factual sufficiency of the implied finding. *Roberson v. Roberson*, 768 S.W.2d 280, 281 (Tex. 1989).

Again, the legal and factual sufficiency of the evidence are not independent grounds of error in a case such as this, but are merely factors in assessing whether the trial court abused its discretion in custody matters. *L.M.M.*, 2005 WL 2094758, at *14; *J.H.W.*, 2004 WL 1263254, at *2; *Ferguson*, 927 S.W.2d at 769.

We first consider only the evidence and inferences supporting the trial court's implied finding that the children's present circumstances endangered their physical health or significantly impaired their emotional development to determine if the evidence was legally sufficient to support the judgment. *Bradford*, 48 S.W.3d at 754. During trial, Ward testified that Eastburn would allow the children to play outside with no supervision, that they were not properly bathed and groomed, were not fed well, and once had only an apple to eat all day. Ward claimed Eastburn would yell and cuss in front of the children. Ward also stated she was denied access to the children during the summertime. She also testified that Eastburn would drink and drive with the children in the car, and that both Eastburn and his wife would drink with the children present. There was also evidence that Eastburn had to pull a gun on his wife's ex-husband, who was threatening the wife. The director of the learning center where the children attended day care testified that M.B.E. would act out, have

12

screaming fits, and would wet during naptime after visiting with Eastburn. Ward discussed the home life in her new marriage and new home and claimed that the children were strongly bonded to their stepfather, stepbrother, and other family that lived nearby. Finally, both Ward and Eastburn told the trial court that if Ward would be awarded the right to choose the primary residence of the children, Eastburn would move back to Texas to be close to them. Although the home study concluded that both parties were good parents who had excellent parenting skills, it was recommended to the court that Ward have primary care with visitation split between both parents if Eastburn would relocate to Bowie County.

Ward's testimony of the drunk driving, gun pulling, and lack of grooming and supervision could furnish some reasonable basis for the conclusion that Eastburn endangered the children's physical health. Testimony from the director of the learning center, Ward's statement regarding Eastburn's yelling and cursing, and Eastburn's denial of access to Ward amounted to a scintilla of evidence that the children's emotional development was being significantly impaired. *See In re A.C.S.*, 157 S.W.3d 9, 18 (Tex. App.—Waco 2004, no pet.) (testimony of denial of access was evidence which "would support an allegation that the children's environment may 'significantly impair [their] emotional development'"). Further, the trial court could have considered that removal of the children from their stepfather, stepbrother, and other maternal family members could further significantly impair their emotional well-being and that the best situation would be to follow the

home study recommendation in hopes that Eastburn would move to Texas. We conclude that the evidence was at least legally sufficient to support the trial court's implied finding.

Next, we review all the evidence to determine whether the implied finding was so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust, shock the conscience, or clearly demonstrate bias. *Cain,* 709 S.W.2d at 176; *G.R.W.*, 191 S.W.3d at 899; *L.M.M.*, 2005 WL 2094758, at *14.

The evidence in this case was contested and conflicting. Ward admitted she also cursed around the children and restricted Eastburn's access to the children. Eastburn denied that he pulled a gun on his wife's ex-husband. Both Eastburn and his mother testified that Ward drank in front of the children, and also drove drunk. Eastburn claimed that Ward and her husband would smoke around the children, who were allergic to smoke, and that Ward could not take care of the children by herself. Eastburn, his mother, and sister all testified that Ward was jealous because Eastburn was not paying her attention and that she decided to take the children back to Texas to teach him a lesson. When asked whether the children were in emotional or physical harm when left with Eastburn, Ward said, "I assume so, yes," yet admitted to leaving the children with Eastburn for one week to fifteen days while she went on vacation with her boyfriend. Finally, the person who conducted the home study testified that nothing indicated the children were in physical or emotional danger while they were in Eastburn's possession.

14

Within its discretion, the trial court could have chosen to disbelieve the evidence favoring Eastburn. *Lide v. Lide*, 116 S.W.3d 147, 151 (Tex. App.—El Paso 2003, no pet.) (fact-finder determined weight to be given to testimony and is to resolve conflicts in evidence). When looking at Ward's proof, we cannot say it was so weak or so overwhelmed by Eastburn's contrary proof such that the judgment was manifestly wrong, unjust, or shocking to the conscience. *Cain*, 709 S.W.2d at 176; *Baker*, 2004 WL 756622, at *3. Because there was factually sufficient evidence to support its decision, we will not substitute our judgment for that of the trial court. *L.M.M.*, 2005 WL 2094758, at *3; *C.R.O.*, 96 S.W.3d at 447. Also, we cannot conclude that the trial court abused its discretion or acted without reference to guiding rules and principles.[4] Eastburn's point of error is overruled.[5]

---

[4]The trial court also found the parties' circumstances had materially and substantially changed, perhaps because (1) Eastburn and Ward had remarried before the final hearing, (2) there was evidence by both parties that the other parent cursed around the children or restricted access to the children, (3) both parties had moved into different home surroundings with their new families, (4) there was mistreatment by both parents, and (5) both parents were the improper person to exercise custody. Eastburn did not challenge the legal or factual sufficiency involving this determination or the determination that it was in the best interest of the children to have Ward determine their primary residence.

[5]Eastburn also argues that the trial court's order violated the Uniform Child Custody and Jurisdiction Act, even though he agreed to the trial court's jurisdiction, because it rewarded Ward's "kidnapping" of the children and return to Texas in contravention of the divorce decree. Eastburn recites that the purpose of the UCCJEA is to discourage and eliminate child snatching, avoid jurisdictional competition and relitigation of custody decisions, and to promote cooperation among the states to ensure custody decisions are rendered in the state that can better determine the best interest of the children. "As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the trial court: (A) ruled on the request, objection, or motion, either expressly or implicitly; or (B) refused to rule . . . and the complaining party objected to the refusal." TEX. R.

We affirm the trial court's order.

_____  Josh R. Morriss, III
                                  Chief Justice

Date Submitted:     June 1, 2009
Date Decided:       July 17, 2009

---

APP. P. 33.1(a)(B). Nothing in the record indicates that this argument was presented to the trial court. We overrule that point of error.