In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00139-CV


______________________________




IN THE INTEREST OF S.A.E. AND M.B.E., CHILDREN





 


On Appeal from the County Court at Law


 Bowie County, Texas


Trial Court No. 05D1748-CCL




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 The unsettling realities of the military reassignments of George S. Eastburn, IV, ultimately
led to an order of the trial court modifying the custody of S.A.E. and M.B.E. and the exclusive right
to designate their primary residence. That order, made the subject of this appeal by Eastburn, took
that exclusive right from Eastburn, the children's father, and awarded it to Amanda Ward, their
mother. The problem with that order, argues Eastburn, is that it was issued in violation of Section
156.102 of the Texas Family Code, since the order was not accompanied by the statutorily required
finding that the children's present environment could endanger their physical health or significantly
impair their emotional development. Ward argues that the statute does not apply here.

 We hold that, while (1) Section 156.102 applies to this case, (2) the evidence is sufficient to
support the jury's implied finding of endangerment as required by the statute. We, therefore, affirm
the judgment of the trial court.

 Eastburn and Ward were divorced July 25, 2006. In the divorce decree, they were appointed
joint managing conservators of S.A.E. and M.B.E. Eastburn was granted the exclusive right to
designate the primary residence of the children, restricted to South Carolina due to an upcoming
move. Eastburn, who was on active military duty, was stationed in Georgia. By agreement, the
parties modified the terms of possession outlined in the decree in order to accommodate Eastburn's
schedule, and the children were regularly driven by Ward between South Carolina and Georgia. 
Eventually, this arrangement became unworkable. Ward was advised that the Texas trial court
would lose its jurisdiction unless she returned to Texas with the children before the expiration of six
months from the date the divorce decree was signed. Eastburn was notified of Ward's plan to take
the children while Ward was driving to Georgia with them. He hired a lawyer to file an emergency
motion to prevent the move. Ward and Eastburn met at a police station in Georgia to determine who
was entitled to legal possession of the children at that particular moment. Ward clandestinely left
the police station with the children and drove to Texas. 

 On January 23, 2007, Ward filed a petition to modify the parent-child relationship because
the "circumstances of the children, a conservator, or other party affected by the order to be modified
[had] materially and substantially changed." Correctly noting that "[t]his suit to modify the
designation of the person having the right to designate the primary residence of the children [was]
filed within one year," Ward included an affidavit attempting to meet the requirements of Section
156.102 of the Texas Family Code. 

 A default order was entered April 30, 2007, but was later set aside. Temporary possession
orders  were  entered  July  9,  2007,  and  the  trial  court  indicated  it  would  hear  Ward's  petition
August 29, 2007. During this hearing, the trial court heard highly conflicting testimony from
Eastburn and Ward about their respective parenting skills and the effects on S.A.E. and M.B.E. At
the conclusion of the hearing, the trial court requested the parties to brief the issue of whether
Section 156.101 or 156.102 governed the dispute. No ruling on this issue was made, and nothing
further was done in the case until the trial court again heard the matter, on August 20, 2008, almost
a year after the first hearing. After hearing evidence regarding the parties' changed circumstances,
the trial court determined that modification was in the best interest of the children, appointed Ward
and Eastburn joint managing conservators, and awarded Ward the exclusive right to determine the
children's primary residence. The trial court did not expressly find that the children's present
circumstances endangered their physical or impaired their emotional well-being, yet no one
requested that the trial court make findings of fact and conclusions of law.

 Eastburn now alleges the trial court erred in failing to apply Section 156.102. He also claims
that the evidence was insufficient to support the trial court's judgment and that the court violated
state and federal policy "against rewarding a parent who kidnaps children" when modifying the
order. 

 We review de novo the trial court's conclusion of law. BMC Software Belgium, N.V. v.
Marchand, 83 S.W.3d 789, 794 (Tex. 2002); Ayers v. Mitchell, 167 S.W.3d 924, 928 (Tex.
App.--Texarkana 2005, no pet.). However, because trial courts have broad discretion to determine
what is in a child's best interest, we review a trial court's decision regarding child custody, control,
and possession matters for clear abuse of discretion. Gillespie v. Gillespie, 644 S.W.2d 449, 451
(Tex. 1982); In re L.M.M., No. 03-04-00452-CV, 2005 WL 2094758, at *3 (Tex.
App.--Austin Aug. 31, 2005, no pet.) (mem. op.); In re P.M.B., 2 S.W.3d 618, 621 (Tex.
App.--Houston [14th Dist.] 1999, no pet.); Voros v. Turnage, 856 S.W.2d 759, 761 (Tex.
App.--Houston [1st Dist.] 1993, writ denied).

 A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without
reference to any guiding rules or legal principles. K-Mart Corp. v. Honeycutt, 24 S.W.3d 357, 360
(Tex. 2000); Holtzman v. Holtzman, 993 S.W.2d 729, 734 (Tex. App.--Texarkana 1999, pet.
denied). The fact that a trial court may decide a matter within its discretionary authority differently
than the reviewing court in similar circumstances does not establish an abuse of discretion. 
Holtzman, 993 S.W.2d at 734 (citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242
(Tex. 1985)). As long as some evidence of a substantive and probative nature exists to support the
trial court's decision, we will not substitute our judgment for that of the trial court. L.M.M., 2005
WL 2094758, at *3; In re C.R.O., 96 S.W.3d 442, 447 (Tex. App.--Amarillo 2002, pet. denied).

 Under the abuse-of-discretion standard, alleged legal insufficiency and factual insufficiency
of the evidence are not independent grounds of error, but are merely factors in assessing whether the
trial court abused its discretion. L.M.M., 2005 WL 2094758, at *14; In re J.H.W., No.
14-03-00024-CV, 2004 WL 1263254, at *2 (Tex. App.--Houston [14th Dist.] June 10, 2004, no
pet.) (mem. op.); In re Ferguson, 927 S.W.2d 766, 769 (Tex. App.--Texarkana 1996, no writ). 
Where a sufficiency review "overlaps the abuse of discretion standard . . . we engage in a
two-pronged inquiry." Giron v. Gonzalez, 247 S.W.3d 302, 306 (Tex. App.--El Paso 2007, no pet.). 
We ask if the trial court had sufficient information on which to exercise its discretion and whether
it erred in its application of that discretion. Id. 

 Since Eastburn did not bear the burden of proof at trial, we analyze the legal sufficiency issue
as a "no-evidence" challenge. Id. (citing Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). 
We consider only the evidence and inferences that tend to support the finding and disregard all
evidence and inferences to the contrary. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001). 
Anything more than a scintilla of evidence is legally sufficient to support the finding. Leitch v.
Hornsby, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla of evidence exists if the evidence
furnishes some reasonable basis for differing conclusions by reasonable minds about the existence
of a vital fact. Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002). 

 In a factual sufficiency analysis, we consider all the evidence and set aside the findings only
if they are so contrary to the overwhelming weight of the evidence as to be clearly wrong and
manifestly unjust, shock the conscience, or clearly demonstrate bias. Cain v. Bain, 709 S.W.2d 175,
176 (Tex. 1986); In re G.R.W., 191 S.W.3d 896, 899 (Tex. App.--Texarkana 2006, no pet.); L.M.M.,
2005 WL 2094758, at * 14.

(1) Section 156.102 Applies to this Case

 In the normal case, a trial court may modify an order in a suit affecting the parent-child
relationship if it would be in the best interest of the child and the circumstances of the child or
parents have materially and substantially changed since the date of the last modification order. Tex.
Fam. Code Ann. § 156.101(1) (Vernon 2008). Whether there has been a material and substantial
change of circumstances is normally determined by an examination of the evidence occurring
between the date of the order or judgment sought to be modified and the date of the filing of the
motion to modify. In re C.L.L., No. 12-06-00007-CV, 2007 WL 2045241, at *4 (Tex. App.--Tyler
July 18, 2007, no pet.) (mem. op.) (citing Gibbs v. Greenwood, 651 S.W.2d 377, 379 (Tex.
App.--Austin 1983, no writ)). 

 But where, as has happened here, modification is based on an application filed within a year
of the last conservatorship order, the trial court must also determine that the child's present
environment may endanger the child's physical health or significantly impair the child's emotional
development. See Tex. Fam. Code Ann. § 156.102(a) (Vernon 2008); J.H.W., 2004 WL 1263254,
at *2.

 Section 156.102 of the Texas Family Code, entitled "Modification of Exclusive Right to
Determine Primary Residence of Child Within One Year of Order," states that if suit seeking to
modify the designation of the person having the exclusive right to designate the primary residence
of the child is filed within a year after the order, an affidavit with supporting facts must also be filed
alleging at least one of the following: 

 (1) that the child's present environment may endanger the child's physical
health or significantly impair the child's emotional development; 


 (2) that the person who has the exclusive right to designate the primary
residence of the child is the person seeking or consenting to the modification and the
modification is in the best interest of the child; or 


 (3) that the person who has the exclusive right to designate the primary
residence of the child has voluntarily relinquished the primary care and possession
of the child for at least six months and the modification is in the best interest of the
child. 


Tex. Fam. Code Ann. § 156.102(b) (Vernon 2008). If the trial court sets and hears the motion to
modify, that is proof that the trial court regarded the affidavit as adequate. C.L.L., 2007 WL
2045211, at *3; In re J.K.B., 750 S.W.2d 367, 368 (Tex. App.--Beaumont 1988, no writ). 

 Ward argues that Section 156.102 does not apply because the trial court heard the matter
outside of the one-year time frame. To aid her determination, she relies on two cases which she says
stand for the proposition that "if the motion is not presented to the trial court within the one-year
period following the initial custody order, such motion can then be set for hearing and a hearing can
be had as if it were a motion to modify under any other relevant section of the Texas Family Code." 
C.L.L., 2007 WL 2045241, at *3; Jilek v. Chatman, 613 S.W.2d 558, 559-60 (Tex. Civ.
App.--Beaumont 1981, no writ). Both cases are distinguishable from the facts in this case.

 The parties in Jilek were divorced as of June 19, 1978. Jilek, 613 S.W.2d at 558. The
divorce decree named the mother the managing conservator for three months and the father
managing conservator for the remainder of the year. Id. at 558-59. On June 7, 1978, just a few days
inside of the one-year mark, the mother filed a motion to modify the decree. Id. at 559. The father
also filed a motion to modify, but did so beyond the one-year mark. Id. By agreement, the parties
consolidated the two motions and proceeded to a hearing on their competing motions. Id. Deciding
that the predecessors to Section 156.101 governed instead of 156.102, the court held that in the
absence of presentment of a motion to modify within the year, a finding under the heightened
emergency requirements of Section 156.102 was not required. Id. at 559-60. The court also noted
consolidation of the motions, one of which was filed outside of the one-year mark, justified hearing
the motion without following the requirements of Section 156.102. Id. at 560.

 Similarly, in In re C.L.L., the parties were divorced and were granted joint managing
conservatorship of their child, with the mother having the exclusive right to determine the child's
primary residence. 2007 WL 2045241, at *1. The father filed a motion to modify the divorce
decree, and amended that motion, within the one-year mark. Id. He filed a second motion to modify
the decree after one year had passed. Id. The trial court heard the matter, determined that
modification was in the best interest of C.L.L. under Section 156.101, and gave the father the right
to determine the child's primary residence. Id. The mother appealed, alleging that Section 156.102
should have governed the court's determination. Id. Our sister court cited the holding in Jilek and
reasoned that since the father's third amended motion, which substituted and superseded the prior
motions to modify, was filed more than one year after rendition of the decree, Section 156.102 did
not apply. Id. at *3.

 In our case, the divorce decree was entered July 25, 2006. Only one motion to modify was
filed, that being on January 23, 2007, well within the one-year mark. Because a temporary order was
entered July 9, 2007, sixteen days before the one-year mark, and a hearing on the motion was set for
August 29, 2007, we know the motion was presented to the trial court within one year of the decree. 
The court's delay in actually hearing the motion to modify in this case does not change the fact that
this case was governed by the express requirements of Section 156.102.

 This situation is governed by the plain meaning of Section 156.102(a), which expressly
makes the filing of the motion within the one-year time frame the trigger for its application, and
which fails to suggest that the timing of any subsequent hearing is of any importance in that
application. See Tex. Fam. Code Ann. § 156.102(a); compare Tex. Fam. Code Ann. § 156.102(c)
(Vernon 2008).

 Section 156.102 applies to this dispute. 

(2) The Evidence Is Sufficient to Support the Jury's Implied Finding of Endangerment

 Here, the trial court found the parties' circumstances had materially and substantially
changed. (1) The trial court failed, however, to expressly make the required finding that the children's
present environment endangered their physical health or significantly impaired their emotional
development. (2) 

 Even though the trial court failed to explicitly make the required finding, because there were
no findings of fact and conclusions of law filed in this case, "we must assume that [the trial court]
made all findings in support of its judgment." (3) Agraz v.  Carnley,  143  S.W.3d  547,  554  (Tex.
 App.--Dallas  2004,  no  pet.); see also Heiskell v. Kendrick, No. 14-06-00972-CV, 2007 WL
3072002, at *2 (Tex. App.--Houston [14th Dist.] Oct. 23, 2007, no pet.) (mem. op.) (implying
finding that father's appointment as managing conservator would significantly impair physical health
or emotional well-being of children); In re A.A.M., No. 14-05-00740-CV, 2007 WL 1558701, at n.3
(Tex. App.--Houston [14th Dist.] May 31, 2007, no pet.) (mem. op.) (implying findings that
children's stay with mother had detrimental effect on their emotional welfare);  Baker   v.   Peterson,
No. 10-02-00113-CV, 2004 WL 756622, at *2 (Tex. App.--Waco Apr. 7, 2004, no pet.) (mem. op.)
(quoting Pharo v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996)).

 Eastburn may, however, challenge the legal and factual sufficiency of the implied finding. 
Roberson v. Roberson, 768 S.W.2d 280, 281 (Tex. 1989). 

 Again, the legal and factual sufficiency of the evidence are not independent grounds of error
in a case such as this, but are merely factors in assessing whether the trial court abused its discretion
in custody matters. L.M.M., 2005 WL 2094758, at *14; J.H.W., 2004 WL 1263254, at *2; Ferguson,
927 S.W.2d at 769. 

 We first consider only the evidence and inferences supporting the trial court's implied finding
that the children's present circumstances endangered their physical health or significantly impaired
their emotional development to determine if the evidence was legally sufficient to support the
judgment. Bradford, 48 S.W.3d at 754. During trial, Ward testified that Eastburn would allow the
children to play outside with no supervision, that they were not properly bathed and groomed, were
not fed well, and once had only an apple to eat all day. Ward claimed Eastburn would yell and cuss
in front of the children. Ward also stated she was denied access to the children during the
summertime. She also testified that Eastburn would drink and drive with the children in the car, and
that both Eastburn and his wife would drink with the children present. There was also evidence that
Eastburn had to pull a gun on his wife's ex-husband, who was threatening the wife. The director of
the learning center where the children attended day care testified that M.B.E. would act out, have
screaming fits, and would wet during naptime after visiting with Eastburn. Ward discussed the home
life in her new marriage and new home and claimed that the children were strongly bonded to their
stepfather, stepbrother, and other family that lived nearby. Finally, both Ward and Eastburn told the
trial court that if Ward would be awarded the right to choose the primary residence of the children,
Eastburn would move back to Texas to be close to them. Although the home study concluded that
both parties were good parents who had excellent parenting skills, it was recommended to the court
that Ward have primary care with visitation split between both parents if Eastburn would relocate
to Bowie County.

 Ward's testimony of the drunk driving, gun pulling, and lack of grooming and supervision
could furnish some reasonable basis for the conclusion that Eastburn endangered the children's
physical health. Testimony from the director of the learning center, Ward's statement regarding
Eastburn's yelling and cursing, and Eastburn's denial of access to Ward amounted to a scintilla of
evidence that the children's emotional development was being significantly impaired. See In re
A.C.S., 157 S.W.3d 9, 18 (Tex. App.--Waco 2004, no pet.) (testimony of denial of access was
evidence which "would support an allegation that the children's environment may 'significantly
impair [their] emotional development'"). Further, the trial court could have considered that removal
of the children from their stepfather, stepbrother, and other maternal family members could further
significantly impair their emotional well-being and that the best situation would be to follow the
home study recommendation in hopes that Eastburn would move to Texas. We conclude that the
evidence was at least legally sufficient to support the trial court's implied finding.

 Next, we review all the evidence to determine whether the implied finding was so contrary
to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust, shock the
conscience, or clearly demonstrate bias. Cain, 709 S.W.2d at 176; G.R.W., 191 S.W.3d at 899;
L.M.M., 2005 WL 2094758, at *14.

 The evidence in this case was contested and conflicting. Ward admitted she also cursed
around the children and restricted Eastburn's access to the children. Eastburn denied that he pulled
a gun on his wife's ex-husband. Both Eastburn and his mother testified that Ward drank in front of
the children, and also drove drunk. Eastburn claimed that Ward and her husband would smoke
around the children, who were allergic to smoke, and that Ward could not take care of the children
by herself. Eastburn, his mother, and sister all testified that Ward was jealous because Eastburn was
not paying her attention and that she decided to take the children back to Texas to teach him a lesson. 
When asked whether the children were in emotional or physical harm when left with Eastburn, Ward
said, "I assume so, yes," yet admitted to leaving the children with Eastburn for one week to fifteen
days while she went on vacation with her boyfriend. Finally, the person who conducted the home
study testified that nothing indicated the children were in physical or emotional danger while they
were in Eastburn's possession.

 Within its discretion, the trial court could have chosen to disbelieve the evidence favoring
Eastburn. Lide v. Lide, 116 S.W.3d 147, 151 (Tex. App.--El Paso 2003, no pet.) (fact-finder
determined weight to be given to testimony and is to resolve conflicts in evidence). When looking
at Ward's proof, we cannot say it was so weak or so overwhelmed by Eastburn's contrary proof such
that the judgment was manifestly wrong, unjust, or shocking to the conscience. Cain, 709 S.W.2d
at 176; Baker, 2004 WL 756622, at *3. Because there was factually sufficient evidence to support
its decision, we will not substitute our judgment for that of the trial court. L.M.M., 2005 WL
2094758, at *3; C.R.O., 96 S.W.3d at 447. Also, we cannot conclude that the trial court abused its
discretion or acted without reference to guiding rules and principles. (4) Eastburn's point of error is
overruled. (5)

 We affirm the trial court's order.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: June 1, 2009

Date Decided: July 17, 2009

 
1. A few factors may have been involved in this finding of changed circumstances:
(1) Eastburn and Ward had each remarried before the final hearing; (2) there was evidence by both
parties that the other parent cursed around the children or restricted access to the children; (3) both
parties had moved into different home surroundings with their new families; (4) there were
allegations of mistreatment by both parents; and (5) both parents were alleged to be improper persons
to exercise custody. A noncomprehensive list of material changes, as described by other courts, can
include  (1)  marriage  of  one  of  the  parties,  (2)  poisoning  of  the  child's  mind  by  one  of  the
parties, (3) change in the home surroundings, (4) mistreatment of the child by a parent or stepparent,
or (5) a parent's becoming an improper person to exercise custody. In re A.L.E., 279 S.W.3d 424,
428-29 (Tex. App.--Houston [14th Dist.] 2009, no pet.) (citing In re Marriage of Chandler, 914
S.W.2d 252, 254 (Tex. App.--Amarillo 1996, no writ); Wright v. Wright, 610 S.W.2d 553,555 (Tex.
Civ. App.--Houston [1st Dist.] 1980, no writ)). 
2. Completed home studies resulted in testimony that both parents were good parents, had
excellent parenting skills, and that the children were not in danger while they were in Eastburn's
possession.
3. Findings of fact "shall not be recited in a judgment," but are required to be filed separately. 
Tex. R. Civ. P. 299a. "The legislature made it clear in enacting the family code that, unless
expressly provided otherwise, suits affecting the parent-child relationship are to be governed by the
same rules of procedure as those generally applied to other civil cases." In re E.A.C., 162 S.W.3d
438, 442 (Tex. App.--Dallas 2005, no pet.) (citing Tex. Fam. Code Ann. § 109.002(a) (Vernon
2008)). "In the absence of a requirement that specific findings of fact be included in the trial court's
order, findings included in a judgment cannot form the basis of a claim on appeal." A.A.M., 2007
WL 1558701, at n.3 (citing Frommer v. Frommer, 981 S.W.2d 811, 813-14 (Tex. App.--Houston
[1st Dist.] 1998, pet. dism'd)). 
4. The trial court also found the parties' circumstances had materially and substantially
changed, perhaps because (1) Eastburn and Ward had remarried before the final hearing, (2) there
was evidence by both parties that the other parent cursed around the children or restricted access to
the children, (3) both parties had moved into different home surroundings with their new families,
(4) there was mistreatment by both parents, and (5) both parents were the improper person to
exercise custody. Eastburn did not challenge the legal or factual sufficiency involving this
determination or the determination that it was in the best interest of the children to have Ward
determine their primary residence. 
5. Eastburn also argues that the trial court's order violated the Uniform Child Custody and
Jurisdiction Act, even though he agreed to the trial court's jurisdiction, because it rewarded Ward's
"kidnapping" of the children and return to Texas in contravention of the divorce decree. Eastburn
recites that the purpose of the UCCJEA is to discourage and eliminate child snatching, avoid
jurisdictional competition and relitigation of custody decisions, and to promote cooperation among
the states to ensure custody decisions are rendered in the state that can better determine the best
interest of the children. "As a prerequisite to presenting a complaint for appellate review, the record
must show that . . . the trial court: (A) ruled on the request, objection, or motion, either expressly
or implicitly; or (B) refused to rule . . . and the complaining party objected to the refusal." Tex. R.
App. P. 33.1(a)(B). Nothing in the record indicates that this argument was presented to the trial
court. We overrule that point of error.