Toby R. HOLTZMAN, Appellant,

v.

Steven F. HOLTZMAN, Appellee.

No. 06–98–00075–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Feb. 25, 1999.

Decided April 1, 1999.

Rehearing Overruled June 15, 1999.

Morton Joseph Fogelman, M. Forest Nelson, Burt Barr & Associates, Dallas, for appellant.

Charles R. McBeth, Richardson, William C. Odeneal, Logan Odeneal, Odeneal & Odeneal, Dallas, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

1. Lauretta Holtzman is the present wife of Steven Holtzman. Quality Surgery Care was also added as a defendant through consolidation, but is not directly involved in this ap-

## OPINION

Opinion by Justice GRANT.

Toby Holtzman appeals from a take-nothing judgment in relation to her attempts to execute on a judgment taken against her ex-husband, Steven Holtzman.[1] She contends that the trial court erred by entering the take-nothing judgment because under Texas Family Code Chapter 157, subchapter G, the arrearages are child support and thus create a lien amenable to foreclosure. She also contends that the court's imposition of sanctions against her in the form of attorney's fees are improper. This case does not affect Toby Holtzman's right to execution under her judgment generally, but only disallows her from executing on property that is only subject to execution for child support arrearages. The issue is whether the judgment is general in nature or is based upon child support.

The underlying facts in this case are entirely convoluted. Toby Holtzman (the ex-wife) divorced Steven Holtzman, M.D., in 1984 in Illinois, with a property settlement agreement which, among other things, provided that Steven would continue child support payments until their four children were emancipated or until they completed their education or reached the age of twenty-three. He also agreed to pay for Toby's education. She went to law school. The children of the marriage were born between 1971 and 1979. Steven moved to Texas in 1988.

Toby filed suit in 1990 in Texas seeking recovery for amounts she claimed she had not been paid under the settlement agreement. A take-nothing judgment was rendered against Toby. She appealed, and in an unpublished opinion, the Dallas Court of Appeals reversed the take-nothing damage award because Steven had judicially

peal. The holder of the property upon which Toby sought to execute (a retirement account) is Smith Barney, Inc.

admitted that he owed her $34,467.34, rendered judgment in that amount, and remanded to the trial court to set reasonable attorney's fees.

After remand, on October 5, 1995, the trial court awarded Toby $19,548.65 in attorney's fees. Despite ongoing efforts, including garnishment proceedings and turnover orders, Toby was unable to collect the amount due under the judgment. Toby then brought a separate suit in Illinois against Steven and obtained a $73,695.43 judgment. None of these judgments was satisfied.

In 1997, Steven filed for bankruptcy protection. As a part of that action, the bankruptcy court signed an agreed judgment on September 26, 1997. In the judgment, based upon the agreement of the parties, the $34,467.34 judgment rendered by the Dallas Court of Appeals, the $19,548.65 judgment for attorney's fees, and the $73,-695.43 judgment rendered in the Illinois action were merged into a single nondischargeable judgment in the amount of $82,400, plus interest.

The present action is part of Toby's efforts to collect on the judgment. The action in this district court commenced in 1990, and this is part of continuing litigation under that cause number. On February 11, 1998, she filed a pleading seeking recovery entitled "Notice of Child Support Lien." She also has filed a number of other motions requesting other forms of relief, including sanctions against Steven. An extensive hearing was conducted, at which the lien issue was addressed, as well as some of her other motions. On April 22, 1998, the district court signed an order on her motion for sanctions, finding that the agreed judgment for $82,400 superseded all prior judgments against Steven, that the bankruptcy court judgment is an obligation for alimony, maintenance, or support other than child support or past child

support as defined by the Texas Family Code, that the judgment may be collected as any other civil judgment, and that Steven and Lauretta were each entitled to $1,500 in attorney's fees.

The trial court later signed a corrected order *nunc pro tunc* (dated June 15, 1998), stating that the motion ruled upon had been misnamed and changing the order ruled upon to "Plaintiff's Amended Application For Writ of Garnishment After Judgment and to Foreclose Child Support Lien." [2] The court then decreed that Toby take nothing by her "Motion To Withhold Child Support From Income and to Order Payments of Support By Trust." In the corrected order, which was rendered while the trial court retained plenary power over its decision, the court stated that it was substituting the order for its predecessor and deleted the award of attorney's fees.

Toby contends on appeal that the trial court erred by entering a take-nothing judgment in connection with her application for postjudgment writs of execution. The executions were sought explicitly under the authority of the Texas Family Code. Thus, the issue is whether Toby could execute upon this judgment under the authority of the Family Code, or whether she was instead required to utilize other forms of execution to recover under the judgment.

■ Before reaching this issue, however, the first question is whether there is an appealable judgment or order in this case. The order entered by the trial court in which it ruled upon Toby's application for writ of garnishment and to foreclose lien does not contain "Mother Hubbard" language. It explicitly rules on the stated petition, but it does not, either by implication or express language, purport to rule on counterclaims brought by Steven in his response to her petition. [3]

---

**2.** In the motion, Toby sought, under the child support provisions of the Family Code, to execute upon property by obtaining a lien against the property, and also to execute upon

retirement accounts. *See* TEX. PROP.CODE ANN. § 42.005 (Vernon Supp.1999).

**3.** In the counterclaims, Steven sought to recover based upon his claim that the recording

The long-standing rule of law in Texas has been that a final judgment is one that disposes of all parties and all issues in a lawsuit. *Schlipf v. Exxon Corp.*, 644 S.W.2d 453, 454 (Tex.1982). To be final, a judgment must determine rights of the parties and dispose of all issues involved so that no future action by the court will be necessary in order to settle and determine the entire controversy. *Wagner v. Warnasch*, 156 Tex. 334, 295 S.W.2d 890 (1956). In the present case, there is no disposition of the counterclaims raised by Steven in response to Toby's petition.

However, there is also a presumption that if a judgment is rendered after a conventional trial on the merits, it is presumed to dispose of all issues and parties, and is a final judgment. *North East Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex.1966). This case is not the main body of the underlying litigation, which has spanned fifteen years and a half-dozen courts.

In the context of executions, a garnishment action, although ancillary to the underlying suit, is a separate proceeding. *Voelkel–McLain Co. v. First Nat'l Bank of Roswell, N.M.*, 296 S.W. 970, 971 (Tex.Civ.App.-Dallas 1927, no writ); *Walton & Stockton v. Corpus Christi Nat'l Bank*, 185 S.W. 369 (Tex.Civ.App.-San Antonio 1916, no writ). Because it is a separate proceeding, an appeal will lie from a final judgment in a garnishment suit independently of the underlying suit. *Varner v. Koons*, 888 S.W.2d 511, 513 (Tex.App.-El Paso 1994, no writ); *Roberts v. Stoneham*, 31 S.W.2d 856, 857 (Tex.Civ.App.-Austin 1930, no writ). This proceeding was conducted as a trial. A hearing was held,

testimony was taken, exhibits were introduced, and the trial court rendered a judgment. This proceeding stands alone as a separate action. We, therefore, indulge in the *Aldridge* presumption that the judgment was intended to dispose of all issues and parties and will consider the appeal on the merits.[4]

Section 157.312 of the Texas Family Code states that a claimant may enforce child support by a lien as provided by the subchapter. It goes on to state that

(d) A child support lien arises:

(1) by operation of law against real and personal property of an obligor for all amounts of overdue support, regardless of whether the amounts have been adjudicated or otherwise determined, . . . .

(2) when a court having continuing jurisdiction . . . determines an amount of arrears owed by a child support obligor.

(e) A child support lien arising in another state may be enforced in the same manner and to the same extent as a lien arising in this state.

TEX. FAM.CODE ANN. § 157.312 (Vernon Supp.1999).

It is evident that before this statutory authority may be utilized for execution, the judgment to be enforced must be for child support. The question is whether such was available in this case. Toby sought to recover under three different judgments as set out above. Those three judgments, however, were made a part of an agreed judgment entered by the bankruptcy court. It held that because of the agreements and representations of the parties, pursuant to their compromise and settlement of the controversy, and the court

---

of the "child support" liens were false and fraudulent and done with evil intent and also sought sanctions based upon his claim that the litigation was brought solely for purposes of harassment.

4. Further, so long as a judgment remains unsatisfied, a judgment creditor is not limited in the number or type of enforcement actions

it may file and pursue. As a result, the judgment debtor is entitled to a "final judgment"on each application, i.e., an appealable judgment disposing of the parties and issues raised in a particular application for a post-judgment enforcement order or writ. *See Schultz v. Fifth Judicial Dist. Court of Appeals*, 810 S.W.2d 738, 740, 740 n. 8 (Tex.1991).

finding that it had jurisdiction, that the three judgments

> "were the result of Steven's breach of a property settlement agreement incident to his divorce from Toby and are an obligation for alimony, maintenance or support.
>
> IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED, that Toby R. Holtzman have and recover of and from Steven F. Holtzman a nondischargeable judgment ... in the sum of ... $82,400.00."

■ Toby and Steven thus agreed that the prior judgments, which they apparently agreed the bankruptcy court had the authority to address, should be replaced by a judgment not dischargeable in bankruptcy.[5] Although Toby has argued at some length that the settlement agreement should be treated as a part of the judgment, she has provided no authority to support this position. Under her argument, the bankruptcy court's judgment self-destructed after ninety days when Steven did not pay under the terms of the underlying agreement. There is no language either in the judgment or referenced by the judgment that supports this contention. Her position would transform a final judgment into a conditional document, based upon extraneous material. This position is unsupportable. We will not approve a situation where the very existence of a judgment wholly regular on its face may be attacked in this manner.

■ Further, a judgment entered into by consent of the parties is not invalidated by a subsequent failure to perform a condition upon which the consent was based.

*Peterman v. Peterman,* 55 S.W.2d 1108 (Tex.Civ.App.-Eastland 1933, no writ). Such a final judgment is intended to be the end of controversy and trial, and its controlling intent is that expressed on the face of the judgment and not an intention that may be otherwise deduced. *Blackwell v. Coleman Co.,* 94 Tex. 216, 59 S.W. 530 (1900); *Carter v. Nichols,* 349 S.W.2d 264, 265 (Tex.Civ.App–San Antonio 1961, writ ref'd n.r.e.). We hold that the only remaining executable judgment is the bankruptcy judgment.

■ In a multitiered attack, Toby contends (1) that the bankruptcy judgment is not the enforceable judgment, (2) that the judgments underlying the bankruptcy judgment are enforceable, and that they are for child support, and (3) that even if the bankruptcy judgment is the enforceable judgment, we should look beneath that judgment to see that the underlying judgments are for child support.

Based upon these premises, she posits that we should conclude that the judgment (whichever judgment applies) is for child support, and that the trial court therefore erred by failing to provide for execution based upon the Texas Family Code.

First, the bankruptcy judgment does not contain language stating that it is a judgment for child support. Even if we had determined that it was appropriate to review the underlying judgments that were compromised and settled by the bankruptcy judgment, Toby has not directed us to any evidence to show that those judgments are based upon a failure to pay child support as opposed to a failure to pay support generally.[6]

---

5. Alimony and support claims are by definition not dischargeable in bankruptcy. 11 U.S.C.A. § 523(a)(5) (West Supp.1999), *see* 9A AM.JUR. 2D *Bankruptcy* § 2263 (1991).

6. The $19,000 award was for attorney's fees. The Dallas Court of Appeals' unpublished opinion does not state why Steven owed $34,-000 to Toby, but simply said that Steven had admitted owing that amount, without stating its purpose. Although Toby relies heavily

upon the $73,000 judgment from a circuit court in Illinois, the terms of that judgment are far from clear. It is a poorly handwritten judgment that is partially illegible. It apparently awards an amount for college expenses, but there is evidence that those were the law school expenses of Toby and not of the children. It also indicates that a portion of the judgment represented expenses, but does not state to whom or for what they are owed.

In reviewing a refusal to execute in this case, we look to see whether the trial court abused its discretion by denying the motion seeking execution. *See Barlow v. Lane,* 745 S.W.2d 451, 453 (Tex.App.-Waco 1988, writ denied); *Jackson v. Crawford,* 727 S.W.2d 628, 633 (Tex.App.-Dallas 1987, no writ). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority different than an appellate judge does not demonstrate such an abuse. *Downer v. Aquamarine Operators,* 701 S.W.2d 238 (Tex.1985).

There is conflicting evidence on the question of whether Steven was at any time in arrears on his child support payments. Neither the bankruptcy judgment nor any of the precedent judgments are conclusively directed at child support or even mention the term. In the absence of conclusive evidence to support her position, Toby has failed to show that the trial court abused its discretion by denying her motion seeking garnishment under the aegis of the Texas Family Code.

This does not suggest that the judgment is unenforceable, but simply that she cannot recover in the manner that she sought enforcement under the Family Code.

Toby also contends that the trial court erred by ordering sanctions against her. Neither the original order nor the order *nunc pro tunc* purports to sanction Toby. The original order awarded to Steven and Lauretta reasonable attorney's fees for defending against Toby's motions for sanctions and contempt, and does not in any respect state that the award was in the nature of sanctions against Toby.

In the second order, the trial judge stated that she had referred to the wrong motion requesting relief (a reasonable mistake, considering the plethora of pleadings brought by Toby seeking various forms of relief), and corrected the name of the pleading involved to state that she was ruling on the application for writ of garnishment and to foreclose child support lien. The second order withdrew and set aside the prior order's award of attorney's fees. This would, of course, lie outside the bounds of an order *nunc pro tunc,*[7] except that when she entered the second order, the court acted within its period of plenary power over the order.[8] Accordingly, at the time that the trial court entered its corrected order changing the outcome of the case, the court had the authority to do so.

The appealable order in this case does not award attorney's fees. Accordingly, the point of error is moot.

The judgment is affirmed.

---

Further, at the hearing, there was testimony before the trial court, supported by documentary evidence, showing that Steven had not fallen in arrears on child support under the terms of the divorce decree or property settlement agreement prior to the entry of any of the various judgments against him. Evidence was introduced indicating that he had refused to pay other items under the property settlement agreement, and Toby argues on appeal that those items constitute child support, even if not so labeled.

7. *See* Tex.R. Civ. P. 316.

8. Under Tex.R. Civ. P. 329b, since a timely (if premature) motion for new trial was filed, the court retained plenary power over its ruling for 105 days. In this case, the following dates apply:

4/22/98   Order signed
4/8/98   Motion for new trial
6/15/98   Order Nunc Pro Tunc signed