316 S.W.3d 202 (2010)
In the Interest of C.A.T., a Child.
No. 05-08-01293-CV.
Court of Appeals of Texas, Dallas.
June 22, 2010.
*203 Rande Herrell, John B. Worley, Michael D. Becker, Asst. Atty. Gen., Austin, TX, for Appellant.
Stephen W. Shoultz, Law Offices of Stephen W. Shoultz, Dallas, TX, for Appellee.
Before Justices RICHTER, LANGMIERS, and MURPHY.

*204 OPINION
Opinion By Justice MURPHY.
The Office of the Attorney General appeals the trial court's order dissolving a writ of garnishment levied against the bank account of appellee Father. In dissolving the writ, the trial court concluded Father, as a self-employed carpenter, was his own employer and attachment of disposable earnings in his personal bank account violated section 157.312(g) of the Texas Family Code. See TEX. FAM.CODE ANN. § 157.312(g) (Vernon 2008). The trial court also concluded the seizure of Father's account violated the judgment on child-support arrears because Father was current on his agreed obligation. In four issues, the OAG contends the trial court erred in dissolving the writ and enjoining the OAG from further garnishment of Father's bank accounts containing disposable earnings. Because we conclude section 157.312(g) does not prohibit garnishment of Father's bank account and the OAG's seizure did not violate the trial court's order, we reverse and remand this cause for further proceedings consistent with this opinion.

BACKGROUND
On January 26, 2006, the trial court rendered a judgment on arrears against Father for $97,300 in unpaid child support plus interest. The order required Father to make periodic payments of $500 per month on the judgment until the arrearage was paid in full. The order further provided that "nothing herein shall prohibit the use of other collection methods authorized by law." In the section of the order titled "Notice to Obligor," the trial court notified Father that "should he fail to pay current child support, or toward the child support arrearage as ordered herein, the [OAG] may pursue an action to suspend any or all licenses he may have." All parties signed the order.
Almost two years later, the OAG sent Father written notice on December 20, 2007 that a child-support lien had been placed on his bank account.[1] The OAG's letter stated that if Father did not respond within ten days of receiving the notice, his account would be liquidated and used "to satisfy the child support arrears in whole or in part." After the OAG's levy, Father contested the lien by filing a motion to dissolve. Arguing he was current on his $500 monthly obligation, Father asserted the OAG violated the January 2006 order. He also claimed that because he was self-employed, the OAG violated section 157.312(g) of the Texas Family Code. Under section 157.312(g), a child-support lien "may not be directed to an employer to attach to the disposable earnings of an obligor paid by the employer." TEX. FAM. CODE ANN. § 157.312(g). Claiming the OAG had seized 100% of his disposable earnings, Father alleged in his motion he was unable to pay his taxes, suppliers, and other business-related expenses. Father asked the trial court to dissolve the notice of lien and determine the money held in the seized account was his disposable earnings. He also requested that any money taken from the account be credited first to his $500 monthly payments. The associate judge denied Father's motion, and Father appealed that ruling to the district judge.
At the hearing before the district judge, Father testified he was self-employed and *205 the levied account[2] was his only checking account, which he used "to pay personal bills and business related expenses." The trial court granted the motion to dissolve the lien and ordered $2000 of the levied funds credited to Father's monthly child-support payments. The trial court further ordered release of the remaining balance to Father and enjoined the OAG from garnishing "any of [Father's] bank accounts... if he [was] not in default of the Court's order dated January 26, 2006."
Thereafter, the trial court signed findings of fact and conclusions of law and heard argument on the OAG's motion for new trial. The trial court denied the motion, with the exception of clarifying its finding that the garnished account contained disposable earnings was "critical" to the language in the order enjoining further garnishment by the OAG. As a result, the trial court amended the order, adding language preventing the OAG from garnishing only those bank accounts containing Father's "disposable earnings."
Upon the OAG's request, the trial court also signed findings of fact and conclusions of law related to its amended order. With regard to the January 26, 2006 judgment on arrears, the trial court found the parties agreed to a repayment schedule; Father was current on his monthly arrearage payments; Father "had the right to rely upon the terms of the agreement entered into ... for repayment of the arrearage"; and the order contained language stating that "nothing herein shall prohibit the use of other collection methods authorized by law." The trial court also found that Father was a self-employed carpenter; Father's employer was Father; the funds seized were the proceeds from Father's work as a self-employed carpenter; as a result of the OAG's seizure, Father "lacked funds to pay [his] child support arrearage and his business suppliers"; and the OAG should have known Father's account "contained only the disposable earnings of [Father] from his carpentry business" when it seized the funds. Based on its factual findings, the trial court concluded the OAG disregarded the January 26, 2006 order; no child-support lien attached to the money seized from Father's account; the OAG's actions violated Texas Family Code section 157.312(g); and the OAG "knew or should have known that attaching [Father's] disposable earnings [was] prohibited by [section 157.312(g)]." Two days later, the trial court heard argument on the OAG's second motion for new trial, which it denied. This appeal followed. Father did not file a brief on appeal.

DISCUSSION

Child-Support Liens
The Texas Family Code prescribes procedures for the enforcement of child-support obligations, including income withholding, lien enforcement, and suspension or revocation of certain licenses held by the obligor. See generally TEX. FAM.CODE ANN. § 158.001 (Vernon 2008) (income withholding); id. § 157.312 (child support lien); id. § 232.003 (suspension of license). Sections 157.311 through 157.331 relate to child-support liens for past-due child support. Id. §§ 157.311-.331. Generally, a party may enforce a child-support order by lien for all amounts of child support due and owing, including interest, regardless of whether the amounts have been adjudicated or otherwise determined. Id. § 157.312(a), (d); see also In re R.C.T., 294 S.W.3d 238, 241 (Tex.App.-Houston [14th *206 Dist.] 2009, pet. denied). A child-support lien attaches to all nonexempt real and personal property of the obligor on or after the date the lien notice or abstract of judgment is filed. TEX. FAM.CODE ANN. § 157.317(a)(1), (a-1). Child-support liens, however, "may not be directed to an employer to attach to the disposable earnings of an obligor paid by the employer." Id. § 157.312(g). Rather, chapter 158 of the family code governs the rights and duties of the obligor's employer regarding income withholding to satisfy child-support obligations or arrearages. See generally id. §§ 158.001-.507; see also id. § 154.007 (Vernon 2008) (order to withhold child support from income).
Chapter 157 also expressly addresses execution and levy on "assets or funds owned by, or owed to, an obligor and subject to a child support lien" in the possession or control of financial institutions and allows delivery of a notice of levy to any such institution, "[n]otwithstanding any other provision of law." Id. § 157.327(a). If the property or right to property to which the child-support lien attached "does not produce money sufficient to satisfy the amount of child support arrearages," a party also "may proceed to levy on other property of the obligor until the total amount of child support due is paid." Id. § 157.331.

Texas Family Code Section 157.312(g)
In its first issue, the OAG challenges the trial court's order dissolving the child-support lien, arguing the factual findings and legal conclusions are based on an erroneous interpretation of section 157.312(g) of the Texas Family Code. Specifically, the OAG contends the trial court misconstrued section 157.312(g) as prohibiting perfection of a child-support lien on a self-employed obligor's bank account. Whether section 157.312(g) prohibits service of a notice of child-support lien on a financial institution in which a self-employed obligor deposits his disposable earnings is an issue of first impression in Texas, and our analysis requires that we first look to the meaning of the statute.
Statutory construction is a legal question we review de novo. F.F.P. Operating Partners, L.P. v. Duenez, 237 S.W.3d 680, 683 (Tex.2007). Our primary objective in construing a statute is to determine and give effect to the Legislature's intent as expressed by the language of the statute. City of Rockwall, Tex. v. Hughes, 246 S.W.3d 621, 625 (Tex.2008); Burnett-Dunham v. Spurgin, 245 S.W.3d 14, 16 (Tex. App.-Dallas 2007, pet. denied). We use the Legislature's definitions and consider any technical or particular meaning the words may have acquired. City of Rockwall, 246 S.W.3d at 625 (citing TEX. GOV'T CODE ANN. § 311.011(b) (Vernon 2005)). Otherwise, we construe the words of the statute according to their plain and common meaning, unless such a construction leads to absurd results. Id. at 625-26; see also TEX. GOV'T CODE ANN. § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). We also presume the entire statute is intended to be effective. TEX. GOV'T CODE ANN. § 311.021(2).
Our analysis also requires a review of the trial court's findings and conclusions. We review a trial court's fact findings for legal and factual sufficiency by the same standards applied to a jury's answer. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex.1994). In a legal sufficiency review, we consider the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.2005). We review a trial court's legal conclusions de novo. BMC Software *207 Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex.2002).
The evidence from which the trial court made its fact findings was undisputed. The January 26, 2006 judgment on arrears required Father to pay $500 per month against the $97,300 debt until the child-support arrearage was paid in full. The order also stated that "nothing herein shall prohibit the use of other collection methods authorized by law." Father was current on his monthly arrearage payments at the time the OAG served the notice of lien on the financial institution in which Father had his personal account. Father was a self-employed carpenter, and the funds seized included proceeds from his work. Father also paid both his business and personal expenses from the account, including his monthly child-support payments. The trial court found from this evidence that the account "contained only the disposable earnings" of Father, and concluded the OAG disregarded the January 26, 2006 order and violated Texas Family Code section 157.312(g).
Looking first to the plain language of the family code, we find nothing indicating the Legislature intended to prohibit service of a child-support lien on a financial institution possessing an account owned by a self-employed obligor. Section 157.312(g) prohibits directing a child-support lien "to an employer." TEX. FAM.CODE ANN. § 157.312(g). Nowhere in the family code has the Legislature defined "employer" to include the obligor as a self-employed individual. Section 101.012 defines "employer" to mean "a person, corporation, partnership, workers' compensation insurance carrier, governmental entity ... or any other entity that pays or owes earnings to an individual." Id. § 101.012 (Vernon 2008).[3] The family code does not define "employee," but the common meaning is "one employed by another ... and usu[ally] for wages." WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 743 (1981). In contrast, someone who is "self-employed" earns "income directly from one's own business, trade, or profession," not "as a specified salary or wages from an employer." Id. at 2060. Similarly, "self-employment income" under the family code "includes benefits allocated to an individual from a business or undertaking in the form of a proprietorship, partnership, joint venture, close corporation, agency, or independent contractor, less ordinary and necessary expenses required to produce that income." TEX. FAM.CODE ANN. § 154.065(a). Thus, by definition, an individual who works for himself is not employed by another. Similarly, the employer pays wages, while the self-employed individual allocates earnings from the business he directs himself. This distinction makes a difference in comparing the lien provisions of chapter 157 with the withholding obligations of employers covered by chapter 158.
Chapter 158 of the family code mandates detailed procedures and rights and duties of the employer related to the employer's withholding of income from an obligor's disposable earnings. See id. §§ 158.001.507. The employer and the obligor are distinct under those withholding provisions. By way of example, family code *208 section 158.204 allows an employer to deduct an administrative fee from the obligor's disposable earnings, section 158.209 prohibits an employer from using a writ of withholding as grounds to terminate or discipline the obligor, and section 158.202 requires an employer to continue to withhold income as long as the obligor is employed by the employer. See id. §§ 158.202, 158.204, 158.209. Applying these provisions to the facts of this case, where no separate entity pays or owes wages to Father, he would be tasked with charging a fee for his administrative services of withholding income from himself. He also would be required to withhold income from his own disposable earnings so long as he continued to employ himself. Thus, the obligor could avoid the withholding obligation by terminating himself, so long as he was not discriminating against himself by firing himself. It is doubtful the Legislature intended such an absurd result. See City of Rockwall, 246 S.W.3d at 625-26; City of San Antonio v. Fourth Court of Appeals, 820 S.W.2d 762, 768 (Tex.1991) (orig. proceeding). The discrete requirements for individual obligors and employers support interpretation of the statute pursuant to the plain meaning of the language. Case law also recognizes the practical distinction between withholding obligations of employers and personal payments by self-employed obligors. See, e.g., Mathis v. State, 930 S.W.2d 203, 207-08 (Tex.App.-Houston [14th Dist.] 1996, no writ) ("[Obligor] has not shown good cause why he should be exempt from making periodic payments as a self-employed individual.... [T]he judgment applies to current and future employers, covering the contingency that [obligor] will not always be self-employed.").
Applying the trial court's fact finding that Father was Father's employer in the context of the chapter 157 lien provisions further confirms the Legislature did not intend to blur that line. Under that finding, Father would be both an employer and an employee-obligor. Section 157.312(d) provides a child-support lien automatically arises when child support is "due and owing," subject only to the perfection requirements of chapter 157. TEX. FAM.CODE ANN. § 157.312(d) (providing child-support lien "arises by operation of law"); id. §§ 157.313-.316 (perfection provisions); see also Herzfeld v. Herzfeld, 285 S.W.3d 122, 127 (Tex.App.-Dallas 2009, no pet.). That lien attaches to all nonexempt and personal property of the obligor, including his bank account. TEX. FAM.CODE ANN. § 157.317(a)(1); see also id. § 157.327(a). Section 157.3145 specifically addresses service of lien notice on the financial institution holding property in the name, or in behalf, of an obligor. Id. § 157.3145. The plain language of section 157.312(g), which is at issue in this appeal, prohibits perfection of a child-support lien when it is directed to an "employer" to attach to the disposable earnings of an obligor "paid by the employer." Id. § 157.312(g). Notably, the levy against an obligor's disposable earnings is not limited solely to those employed by others. See Mathis, 930 S.W.2d at 207-08. The writ of withholding directed to the employer in fact "has priority over any garnishment, attachment, execution, or other assignment or order affecting disposable earnings." TEX. FAM.CODE ANN. § 158.008.
By the express language of the above provisions, when a child-support lien is directed to a self-employed obligor's personal bank account, the lien is not directed to an "employer" for purposes of attachment. Nor does the lien attach to the disposable earnings of the obligor paid or owed by an employer. Rather, the lien is directed to the obligor's financial institution "possessing or controlling assets or funds owned by, or owed to" the obligor as *209 permitted under section 157.327(a). Id. § 157.327(a). The lien attaches to the disposable earnings allocated by the obligor directly from his own business and subject to his control. Disposable earnings under the control of an obligor have never been protected from child-support liens that arise as a matter of law.
In the situation affected by section 157.312(g), a claimant's lien against the disposable earnings paid by the employer does not arise by operation of law. Instead, the claimant is seeking income withholding. Under the procedures governed by chapter 158, an employer is required to deduct a specified amount from the obligor's disposable earnings before the earnings are paid. See id. §§ 158.201, 158.203. When an obligor is self-employed, however, income withholding by the "employer" is typically unavailable because there is no such third party as that term is defined by the family code. The obligor is also already personally under an order to pay such amounts pursuant to the judgment rendered by the trial court under chapter 157. To hold otherwise would allow all self-employed obligors to shield their earnings, including those maintained in bank accounts, from a child-support lien.
Interpreting section 157.312(g) as exempting attachment of a lien to a self-employed obligor's disposable earnings held in an account owned by the obligor would also render virtually meaningless those sections in the family code that provide a child-support lien arises by operation of law and attaches to all nonexempt personal property of the obligor, including bank accounts. Id. §§ 157.312(d), 157.317(a)(1), 157.327(a). Section 157.327(a) does not differentiate between financial assets or funds of obligors who are employed by another and obligors who are self-employed. The only limitation is that the funds or assets must be "owned by, or owed to" the obligor and "subject to a child support lien." Id. § 157.327(a). Absent express language allowing self-employed obligors an exemption from the levy allowed against an obligor's bank account, we cannot presume the Legislature intended to carve out self-employed obligors.
To expand the definition of "employer" to include a "self-employed obligor" on the record before us would strain the meaning of the plain language and common understanding of the statute as described above. Father's evidence showed he used one, non-segregated account for all purposes. He offered no evidence of whether he established a separate entity for business purposes, whether he ever paid himself a salary or wage, or whether he believed he "owed" himself any money as earnings from his self-employment. Based on the record in this case, and given the plain language of the statute, we conclude section 157.312(g) does not prohibit service of a child-support lien on the financial institution in this case in which Father deposited all earnings and from which he paid all expenses, both personal and business.
Because self-employed Father here cannot be both an employer and employee-obligor under the family code, the trial court's finding that Father's employer was Father is not supported by legally sufficient evidence. Consequently, the trial court erred when it concluded (1) no child-support lien attached to the funds in Father's bank account; (2) the OAG violated section 157.312(g); (3) self-employed persons are entitled to the protection of section 157.312(g); and (4) the OAG knew or should have known that attaching a lien to Father's disposable earnings was prohibited by section 157.312(g). We sustain the OAG's first issue and turn to the OAG's related third issue.

*210 The January 26, 2006 Order
In its third issue, the OAG contends the trial court erroneously concluded the OAG disregarded the January 2006 order and the agreement among the parties when it seized the funds in Father's bank account. In its findings, the trial court found the January 2006 order represented an agreement among the parties. The OAG also acknowledged that "all parties agreed to the January 26, 2006 [order]...." When faced with an agreed order from the trial court, we interpret the order as if it were a contract between the parties; our interpretation of the order is governed by the usual rules of contract interpretation. McCray v. McCray, 584 S.W.2d 279, 281 (Tex.1979) (per curiam); Miller v. Miller, 700 S.W.2d 941, 951 (Tex. App.-Dallas 1985, writ ref'd n.r.e.).
Our primary concern in interpreting a contract is to ascertain its meaning and interpret what obligations are imposed on Father. See Coker v. Coker, 650 S.W.2d 391, 393 (Tex.1983). We examine and consider the entire writing as a whole to harmonize and give effect to all the provisions so that none will be rendered meaningless. Id. If the writing can be given a certain and definite meaning or interpretation, then it is not ambiguous and we will construe it as a matter of law. Id.; Broesche v. Jacobson, 218 S.W.3d 267, 271 (Tex.App.-Houston [14th Dist.] 2007, pet. denied).
The January 2006 order contains a section titled "Judgment on Arrears." In that section, the trial court rendered judgment against Father for $97,300 in unpaid child support plus interest. The order required Father "to pay said child support judgment by paying $500.00 each month... until the arrearage is paid in full...." The monthly payments were to begin on the first day of February 2006, and were thereafter due "on or before the same day of each month...." The last sentence in this section provided that "nothing herein shall prohibit the use of other collection methods authorized by law." In a separate section following the judgment on arrears, the order provided notice to Father that "should he fail to pay current child support, or toward the child support arrearage as ordered herein, the [OAG] may pursue an action to suspend any or all licenses he may have."
The OAG argues the trial court misinterpreted the January 2006 order to prohibit the pursuit of other remedies provided by law until Father defaults on his court-ordered payment schedule. We agree. Under the terms of the January 2006 order, Father had two obligationsto pay back the amount of the child-support arrearage and to be current on his court-ordered $500 monthly payments. The existence of the payout schedule in the January 2006 order did not preclude the OAG from utilizing any other available remedies, such as a child-support lien, to collect on the arrearage owed by Father. See, e.g., TEX. FAM. CODE ANN. § 157.003(b) (motion for enforcement not an election of remedies; does not preclude or limit other available remedies); id. § 157.312(b) ("The remedies provided by this subchapter do not affect the availability of other remedies provided by law."); In re R.C.T., 294 S.W.3d at 242-43 (payout schedule did not change "due and owing" nature of entire debt under section 157.312(d)); In re Dryden, 52 S.W.3d 257, 263 (Tex.App.-Corpus Christi 2001, orig. proceeding) (payout schedule does not prevent execution for arrearage). Nor does the payout schedule in the January 2006 order expressly condition the OAG's use of other remedies available on a default by Father. See Attorney Gen. of Tex. v. Wilson, 878 S.W.2d 690, 691 (Tex.App.-Beaumont 1994, no writ) (per curiam) (trial court erred in prohibiting *211 Attorney General from attempting to satisfy judgment so long as debtor timely made periodic payments).
This interpretation is consistent with the plain language of the order which provides "nothing herein" shall prohibit the use of other collection methods authorized by law. Cf. In re Dryden, 52 S.W.3d at 263 ("As long as a judgment remains unsatisfied, a judgment creditor is not limited in the number or type of enforcement actions she may file and pursue.") (citing Holtzman v. Holtzman, 993 S.W.2d 729, 734 n. 4 (Tex.App.-Texarkana 1999, pet. denied)). Contrary to rules of contract construction, this language would be rendered meaningless if the OAG were not allowed to use other collection methods so long as the $500 payments were current. See Coker, 650 S.W.2d at 393. Consistent with the family code, the unequivocal language allowed the OAG to collect on the judgment regardless of whether Father was current under the payout schedule. See TEX. FAM. CODE ANN. § 157.003(b).
That the January 2006 order included a section notifying Father of a possible suspension of any of his licenses should he fail to pay current child support or toward the arrearage does not negate the language in the previous section giving the OAG the right to pursue other collection methods permitted by law. Rather, the notice section merely provided a warning to Father that in addition to "the use of other collection methods authorized by law," his licenses could be suspended by the OAG if he failed to pay as ordered. See id. § 232.003. The notice provision did not place a limit on the various enforcement mechanisms and remedies available to the OAG. Rather, consistent with the family code, it conditioned the OAG's use of this particular remedy on Father's failure to submit court-ordered payments.
The trial court found that Father was current on his child-support monthly arrearage payments and he "had the right to rely upon the terms of the agreement entered into ... for repayment of the arrearage." Although the trial court observed the order also included the language allowing other collection methods, it concluded the OAG disregarded the "agreements reached among all parties." No evidence was presented as to the agreement of the parties other than the order itself. Based on a plain reading of that order, we conclude the OAG's levy on Father's account was not prohibited. Consequently, the trial court erred when it concluded the OAG disregarded the January 2006 order and the parties' agreements. We sustain the OAG's third issue.

Issues Two and Four
The OAG's second issue assigns error to the trial court's conclusion of law that it "would violate the equal protection clause of the 14th Amendment if self-employed persons [were] not afforded the same protection as employed persons." Based on our resolution of the OAG's first issue, we do not reach this issue. TEX.R.APP. P. 47.1. The trial court should also first have the opportunity to address the OAG's issue, if necessary, in light of this opinion.
In its fourth issue, the OAG contends the trial court lacked jurisdiction to enjoin the OAG from the lawful pursuit of its statutory duties. In light of our reversal of the order dissolving the writ of garnishment in its entirety, we do not reach issue four. Id.

CONCLUSION
Family code section 157.312(g) does not prohibit service of a child-support lien on the financial institution in which all of Father's earnings were maintained. The OAG's actions also did not violate the January *212 26, 2006 order or the parties' agreement. Accordingly, we reverse the trial court's order dissolving the writ of garnishment and remand this cause for further proceedings consistent with this opinion.
NOTES
[1] The OAG also attempted to seize the funds in Father's bank account in June 2006. Father contested the lien, filing a motion to dissolve the writ of garnishment. The OAG failed to appear at the hearing on Father's motion, and an order dissolving the writ was entered by default.
[2] Although the record contains references to two accounts at one financial institution, Father's testimony references only one account. Accordingly, references in this opinion are to that account.
[3] "Earnings" means "a payment to or due an individual, regardless of source and how denominated" and includes "wages, salary, [and] compensation received as an independent contractor...." TEX. FAM.CODE ANN. § 101.011. "Disposable earnings" are "the part of the earnings of an individual remaining after the deduction from those earnings of any amount required by law to be withheld...." Id. § 101.010. The definitions of "employer," "earnings," and "disposable earnings" apply to all suits affecting the parent-child relationship. Id. § 101.001(a).