

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00053-CV

IN THE INTEREST OF C.R.J., A CHILD

On Appeal from the County Court at Law
Cass County, Texas
Trial Court No. CCL-11-D-296

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

## MEMORANDUM OPINION

Jami N. Tally and Leonard M. Jester, III, were divorced on September 9, 2011. They were appointed as joint managing conservators of their son, C.R.J., with Tally having "the exclusive right to designate the primary residence of the child without regard to geographic location." Jester received word that Tally intended to remarry and move with the child to New Mexico. In a petition to modify the parent-child relationship filed on June 18, 2012, Jester requested that he be given the right to designate the residence of the child[1] and that the "residence be restricted to Cass County." The trial court modified the parent-child relationship by limiting the designation of the primary residence to "a 100 mile radius of Atlanta, Texas."[2]

On appeal, Tally argues, among other things, that (1) the trial court erred in holding a hearing on Jester's motion because his supporting affidavit was insufficient, (2) the trial court's temporary orders imposing a geographical restriction were entered erroneously, and (3) the evidence was insufficient for the trial court to enter final orders imposing a geographical restriction. We find that Tally failed to preserve her complaints relating to Jester's affidavit and the court's decision to hold a hearing under his motion. We also find moot Jester's complaints related to the court's temporary orders. We conclude that the evidence was sufficient to support the trial court's final modification. Accordingly, we affirm the trial court's judgment.

---

[1]Jester's request to designate the child's residence was denied. Thus, the only issue in this appeal is whether the geographical restriction was properly imposed.

[2]On August 16, 2012, the trial court issued temporary orders requiring the primary residence of the child to "be within a 50 mile radius of Atlanta, Texas."

## I. Tally Failed to Preserve Issues Related to Jester's Affidavit and the Section 156.102 Hearing

Under Section 156.102 of the Texas Family Code, a petitioner who seeks to modify the exclusive right to determine primary residence of a child within one year of a previous order[3] must file an affidavit containing at least one of the following allegations:

(1)  that the child's present environment may endanger the child's physical health or significantly impair the child's emotional development;

(2)  that the person who has the exclusive right to designate the primary residence of the child is the person seeking or consenting to the modification and the modification is in the best interest of the child; or

(3)  that the person who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession of the child for at least six months and the modification is in the best interest of the child.

TEX. FAM. CODE ANN. § 156.102(a), (b) (West Supp. 2013).

"The philosophical underpinning of section 156.102 is clear:  the Legislature intended to promote stability in the conservatorship of children." *In re D.W.J.B.*, 362 S.W.3d 777, 781 (Tex. App.—Texarkana 2012, no pet.) (quoting *Burkhart v. Burkhart*, 960 S.W.2d 321, 323 (Tex. App.—Houston [1st Dist.] 1997, pet. denied)).  "To that end, relitigation of custodial issues within a short period of time after the custody order is discouraged through the imposition of a heightened standard of verified pleading." *Id.*

Jester alleged that C.R.J.'s present environment could significantly impair the child's emotional development.  The affidavit stated,

---

[3]The date the petition was filed controls whether Section 156.102 applies; "the timing of any subsequent hearing is of [no] importance." *In re S.A.E.*, No. 06-08-00139-CV, 2009 WL 2060087, at *5 (Tex. App.—Texarkana July 17, 2009, no pet.) (mem. op.).

Despite the periods of possession and access set forth in the Final Decree of Divorce, my ex-wife continues to deny me possession of my child. Further, it is my understanding that she recently began dating an individual and has expressed a desire to move to New Mexico with this boyfriend. My child has no friends or family in New Mexico, and the distance between us if he moves would be great as to effectively cut me out of his life. All of his extended family, including grandparents, cousins, aunts and uncles live within a 20 mile radius of his current residence. To take him away from his family, especially his father, would be detrimental to his welfare. Further, since this is a relatively new relationship between my ex-wife and this boyfriend, there is no way of knowing whether this relationship will even last. I believe it to be in the best interest of my child to remain in East Texas, close to his father and family.

For the first time on appeal, Tally argues that the affidavit, which sought to maintain the status quo by leaving the child in Atlanta, Texas, did not allege that the child's present circumstances significantly impaired his emotional development. Instead, the allegation was that a possible future move could significantly impair the child's emotional development. Because there was no challenge to the affidavit below, we conclude that Tally has failed to preserve this point for our review. *See In re L.V.*, No. 05-10-00687-CV, 2011 WL 2860008, at *1 (Tex. App.—Dallas July 20, 2011, no pet.) (mem. op.) (citing TEX. R. APP. P. 33.1(a); *Serafin v. Seale*, No. 03-09-00516-CV, 2010 WL 4910047, at *2 (Tex. App.—Austin Dec. 2, 2010, no pet.) (mem. op.)); *see also In re A.L.W.*, 356 S.W.3d 564, 568 (Tex. App.—Texarkana 2011, no pet.) (failure to bring motion to dismiss petition for insufficient affidavit under Section 156.102 to trial court's attention "effectively waived the motion").

A trial court "shall deny the relief sought and refuse to schedule a hearing for modification under this section unless the court determines, on the basis of the affidavit, that facts adequate to support an allegation listed in Subsection (b) are stated in the affidavit." TEX. FAM. CODE ANN. § 156.102(c) (West Supp. 2013). When the trial court holds a Section 156.102

4

hearing, there is an implied finding that the affidavit contained allegations meeting the requirements of that section. *A.L.W.*, 356 S.W.3d at 566–67.

Tally next argues, again for the first time on appeal, that the trial court erred in holding a hearing. To the extent the brief complains of the trial court holding a temporary hearing or issuing temporary orders, we note that these complaints were rendered moot when the final order in this case was entered. *See In re K.L.R.*, 162 S.W.3d 291, 301 (Tex. App.—Tyler 2005, no pet.); *In re P.R.*, 994 S.W.2d 411, 417 (Tex. App.—Fort Worth 1999, pet. dism'd w.o.j.), *disapproved on other grounds*, *In re J.F.C.*, 96 S.W.3d 256, 267 & n.39 (Tex. 2002); *Wright v. Wentzel*, 749 S.W.2d 228, 234 (Tex. App.—Houston [1st Dist.] 1988, no writ); *Garner v. Garner*, 673 S.W.2d 413, 418 (Tex. App.—Fort Worth 1984, writ dism'd); *see also In re Barkley*, No. 07-09-0190-CV, 2009 WL 2431499, at *1 (Tex. App.—Amarillo Aug. 10, 2009, orig. proceeding).

To the extent the complaint relates to the final hearing, the question that must be resolved at the outset is whether Tally has preserved this issue for appeal. Texas Rule of Appellate Procedure 33.1 mandates,

> As a prerequisite to presenting a complaint for appellate review, the record must show that:
>
> (1)    the complaint was made to the trial court by a timely request, objection, or motion that:
>
> (A)    stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and
>
> . . . .

(2)     the trial court:

(A)     ruled on the request, objection, or motion, either expressly or implicitly; or

(B)     refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

Although she had opportunities to apprise the trial court of her complaint, including filing a motion to dismiss, a motion to stay the proceedings, a petition for mandamus relief from the temporary order,[4] and a motion for new trial, as well as lodging objections at the hearings, at no point did Tally complain to the trial court that it should not schedule a final hearing on the motion to modify.

We note that there are several cases, some on petition for writ of mandamus challenging temporary orders imposing a geographical restriction under Texas Family Code Section 156.006, and some on appeal from the final order modifying the parent-child relationship, that address the issue of whether the trial court erred in holding a hearing in the absence of sufficient allegations in the affidavit (or in the absence of a Section 156.102 affidavit altogether). When a trial court erroneously conducts a hearing in contravention of Section 156.102(c), an appellate court reviewing that decision generally conducts a harm analysis to determine if the testimony admitted during the hearing would support an allegation that the child's environment may significantly impair his emotional development (or would otherwise demonstrate one of the three

---

[4]"Because a trial court's temporary orders are not appealable, mandamus is an appropriate means to challenge them." *In re Strickland*, 358 S.W.3d 818, 820 (Tex. App.—Fort Worth 2012, orig. proceeding) (citing *In re Derzapf*, 219 S.W.3d 327, 334–35 (Tex. 2007) (orig. proceeding); *In re Russell*, 321 S.W.3d 846, 853 (Tex. App.—Fort Worth 2010, orig. proceeding)); *see* TEX. FAM. CODE ANN. § 105.001(e) (West 2008).

6

allegations in Section 156.102(b)).  *A.L.W.*, 356 S.W.3d at 567; *In re A.C.S.*, 157 S.W.3d 9, 18–19 (Tex. App.—Waco 2004, no pet.).  However, in each of the cases following this general rule, some effort was made to preserve the error.  *See, e.g.*, *In re Davila*, No. 04-13-00103-CV, 2013 WL 1192617, at *3 (Tex. App.—San Antonio Mar. 22, 2013, orig. proceeding) (mandamus proceeding challenging temporary orders); *Strickland*, 358 S.W.3d at 822 (mandamus proceeding challenging temporary orders); *A.L.W.*, 356 S.W.3d at 565 (motion to dismiss filed); *In re Aguirre*, No. 03-06-00403-CV, 2006 WL 2819069 (Tex. App.—Austin Aug. 25, 2006, orig. proceeding) (mem. op.) (mandamus challenging temporary orders); *A.C.S.*, 157 S.W.3d at 18 (motion to stay); *Burkhart v. Burkhart*, 960 S.W.2d 321, 322 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (motion to dismiss); *Graves v. Graves*, 916 S.W.2d 65, 66 (Tex. App.—Houston [1st Dist.] 1996, no writ) (motion for new trial); *Serafin*, 2010 WL 4910047, at *2 (motion for new trial); *but see Figueroa v. Figueroa*, 580 S.W.2d 621, 622–23 (Tex. App.—El Paso 1979, no writ) (addressing Section 156.102's predecessor, Section 14.08(d)).[5]

Here, because Tally failed to raise an issue with the trial court concerning conducting a hearing without an adequate affidavit, we find the error unpreserved.  *See Barkley*, 2009 WL 2431499, at *1 ("As previously mentioned, the legislature specified that the affidavit was to be

---

[5]Moreover, in this case, Tally agreed that modification was required since she could not comply with the current visitation schedule if she were to move.

used as a means of determining whether a hearing should be held. Since the trial court actually held the hearing, whether it should hold such a hearing is no longer relevant.").[6]

## II.    The Evidence Supports the Trial Court's Modification

### A.    Standard of Review

The trial court may modify an order in a suit affecting the parent-child relationship if it would be in the best interest of the child and the circumstances of the child or parents have materially and substantially changed since the date of the last modification order. TEX. FAM. CODE ANN. § 156.101(a) (West Supp. 2013); *S.A.E.*, 2009 WL 2060087, at *3.

"We review a trial court's decision regarding custody, control, and possession matters involving a child under an abuse of discretion standard." *A.L.W.*, 356 S.W.3d at 566 (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)); *see In re P.M.G.*, 405 S.W.3d 406, 410 (Tex. App.—Texarkana 2013, no pet.). "A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles." *A.L.W.*, 356 S.W.3d at 566 (citing *K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000); *Holtzman v. Holtzman*, 993 S.W.2d 729, 734 (Tex. App.—Texarkana 1999, pet. denied)).

---

[6]The trial court described its reasons for modification at the conclusion of the final hearing, stating,

> [M]y primary concern has to be for the child and not the circumstances of the parties. If this were a shorter distance then I wouldn't have quite the problem that I have with the request to move a thousand miles away. It's just too far to have any, for the Court to be able to fashion any kind of reasonable access between the father and the child that needs to exist for the father. Not only for the father's benefit but primarily for the child's benefit. . . .
>     I am going to broaden the Court's previous ruling somewhat, and that is the Court's order is that the motion to modify is granted to the extent that the child will be restricted to a 100 mile radius of the city of Atlanta, Texas, or from the city of Atlanta, Texas. That should allow some additional geographical range within which it may be possible for the respondent and her new family to obtain employment that's not limited to the immediate area where it has been limited to under the temporary orders of the Court.

"Under the abuse-of-discretion standard, alleged legal insufficiency and factual insufficiency of the evidence are not independent grounds of error, but are merely factors in assessing whether the trial court abused its discretion." *S.A.E.*, 2009 WL 2060087, at *2; *see P.M.G.*, 405 S.W.3d at 410. Where a sufficiency review "overlaps the abuse of discretion standard . . . we engage in a two-pronged inquiry." *S.A.E.*, 2009 WL 2060087, at *2 (citing *Giron v. Gonzalez*, 247 S.W.3d 302, 306 (Tex. App.—El Paso 2007, no pet.)). "We ask if the trial court had sufficient information on which to exercise its discretion and whether it erred in its application of that discretion." *Id.*

Because Tally did not bear the burden of proof at trial, we analyze the legal sufficiency issue as a "no-evidence" challenge. *See Giron*, 247 S.W.3d at 306 (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). We consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

In a factual sufficiency analysis, we consider all the evidence and set aside the findings only if they are so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust, shock the conscience, or clearly demonstrate bias. *Cain v. Bain*, 709

S.W.2d 175, 176 (Tex. 1986); *In re G.R.W.*, 191 S.W.3d 896, 899 (Tex. App.—Texarkana 2006, no pet.).[7]

## B.    The Final Hearing

First, we note that both Tally and Jester cite to testimony and evidence presented during the hearings that resulted in the entry of temporary orders. We have previously stated that "evidence from the hearings for temporary orders could neither be considered by the trial court in reaching its final orders, nor by this Court on reviewing the final order." *In re M.B.D.*, 344 S.W.3d 1, 3 (Tex. App.—Texarkana 2011, no pet.) (citing *May v. May*, 829 S.W.2d 373, 376 (Tex. App.—Corpus Christi 1992, writ denied)). Accordingly, we consider only the evidence presented at the final hearing in our analysis.

Jester believed he would have limited contact with C.R.J. should he be moved to New Mexico. He was also concerned that six-year-old C.R.J. would lose contact with numerous other

---

[7]The trial court entered findings of fact that may be summarized as follows: (1) the circumstances of the parties had changed since the divorce as Tally remarried and desired to relocate the child to Farmington, New Mexico, (2) the desired place for re-location was 1,042 miles from Atlanta, Texas, (3) the child has extended family ties in Cass County, Texas, and none in Farmington, New Mexico, and (4) if the child moved, the child's only contact with the father would involve air travel for limited times when school was in recess. The trial court entered the following conclusions of law:

l.    The circumstances of the child or either party to this suit have not materially and substantially changed since rendition of the order sought to be modified, insofar as the previous order establishes the primary residence of the child with his mother[,] . . . Tally.

2.    The circumstances of the child or either party to this suit have materially and substantially changed since rendition of the order sought to be modified, insofar as the previous order gives . . . Tally the right to establish the primary residence of the child without regard to geographical restriction.

3.    It is not in the best interests of the child for . . . Tally to be allowed to move the child to Farmington, New Mexico.

4.    It is in the best interest of the child that . . . Tally be restricted to establishing the primary residence of the child to a geographical location within 100 miles of Atlanta, Texas.

family members who lived in the area and had regular contact with the child, including his maternal great-grandparents, maternal and paternal grandparents and step-grandparents, uncles, aunts, and cousins.[8] Jester testified that he had obtained a new job based in Shreveport, Louisiana, and that he would be on the job for three to six weeks at a time and would have "a week or two off after every job." He testified about his living conditions and how often he would be able to see C.R.J. if the geographical limitation was imposed and maintained that the move would have a negative impact on his son. Because C.R.J. had no family in New Mexico, Jester did not believe it was in the child's best interest to make the move.

By the time of the final hearing, Tally had married and was pregnant. She testified that the move to New Mexico would allow her to accept an offer for employment "start[ing] out at fifty-three thousand annually plus quarterly sales commissions." She testified about the spacious apartment rented by her husband, the good school that C.R.J. would attend, her willingness to contribute to Jester's travel expenses in visiting the child, and that her family supported the move.[9]

Tally also admitted that the move would mean that C.R.J. and his extended family members "won't see each other as often." She estimated that the drive to New Mexico and then back to Texas cost her between $220.00 and $250.00. Tally proposed that Jester would be able to visit C.R.J. during extended holidays four times a year. When asked whether this visitation

---

[8]Jester testified that he was concerned about Tally "taking [C.R.J.] away from his family," including family "he has lived with." He stated that Tally's father was "the coach that showed up at every game for soccer and baseball, you know. He was the primary coach, you know. I mean, they're just completely one hundred percent involved in his life from every aspect of feeding, clothing, extracurricular activities, you know, her finances."

[9]Tally's husband, Daniel Gann, testified that he would move back to Texas if the trial court imposed a geographical limitation.

schedule would work for her, Tally responded, "Well, if the situation were reversed I probably wouldn't be thrilled about it." She also testified, "It's healthy for a child to have a relationship with their father and I want to maintain that as much as possible," adding, "[C.R.J.] likes to see his dad."

Marie Shelton, who owned the home Jester rented when he was in Atlanta, Texas, described Jester as an attentive father and a good provider. She testified, "[C.R.J.] appears to love his dad. [Jester] appears to love that child. And they interact like normal dad and son. They play together. [Jester] takes care of him. He never asks either one of us to take care of him. He bathes him and he feeds him and he puts him to bed." Shelton testified that Jester and C.R.J. hunted bugs, played video games, and went to the movies, and that Jester "goes and takes his lunch to school and goes and picks him up from school when he's home." Shelton did not believe it was in C.R.J.'s best interest to move to New Mexico because he "is so young and he needs his father."

C.    **Material and Substantial Change**

Tally argues that the evidence at trial was insufficient for the trial court to find a material and substantial change in circumstances and that the geographical restriction was in the child's best interest.[10]

> The court may modify an order that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be in the best interest of the child and:

---

[10]Tally also argues, without citation to authority, that the trial court erred in excluding evidence of delinquent child support because there were no "pleadings with regard to child support." A "court may not render an order that conditions the right of a conservator to possession of or access to a child on the payment of child support." TEX. FAM. CODE ANN. § 153.001(b) (West 2008).

>    (1) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of:
>
>    (A) the date of the rendition of the order; or
>
>    (B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based

TEX. FAM. CODE ANN. § 156.101(a) (West Supp. 2013).

"In deciding whether a material and substantial change of circumstances has occurred, a trial court is not confined to rigid or definite guidelines." *In re A.L.E.*, 279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "Instead, the court's determination is fact-specific and must be made according to the circumstances as they arise." *Id.*

A noncomprehensive list of material changes, as described by other courts, can include (1) marriage of one of the parties, (2) poisoning of the child's mind by one of the parties, (3) a change in home surroundings, (4) mistreatment of the child by a parent or step-parent, or (5) a parent becoming an improper person to exercise custody. *Id.* at 428–29 (citing *In re Marriage of Chandler*, 914 S.W.2d 252, 254 (Tex. App.—Amarillo 1996, no writ); *Wright v. Wright*, 610 S.W.2d 553, 555 (Tex. App.—Houston [1st Dist.] 1980, no writ)).

Tally had remarried, was pregnant with her new husband's child, and wanted to move with him to New Mexico. Tally testified at the hearing about an "altercation" that occurred after she overheard Jester cursing about her in front of C.R.J., poisoning the child's mind. Tally testified,

>    [Jester] ran out at me in my face, pushed m[e] off the front porch. I injured my ankle in some rocks that were there. I immediately walked to the end of the driveway and called 911 and within a few minutes the state troopers had

13

responded and the city police. [Jester] continued to yell and scream obscenities at me while the police were there, and [C.R.J.] is watching this, crying from the front porch. When told to stop, he got physical with the cops, got in their face and started cussing at them. And so at that point he was placed under arrest and sent to the vehicle.

Both parties received tickets for assault as a result of this incident. Thereafter, the parties' new-found acrimony for one other required that communication between the two be facilitated solely through willing intermediaries. Also, Tally had made several changes to the child's home surroundings: first from her home to Gann's home in Queen City, next to her grandparent's home in Atlanta, and last to her mother and step-father's home.

Undoubtedly, the move to New Mexico would have made the current possession arrangement unworkable. After reviewing evidence from the final hearing, we conclude that the trial court did not abuse its discretion by finding a material and substantial change in circumstances since the entry of the previous custody order.

### D. Best Interests of the Child

Next, we review the evidence relating to the child's best interest. "The Legislature has made it clear that '[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child.'" *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002) (quoting TEX. FAM. CODE ANN. § 153.002 (West 2008)). The public policy of this state is to

> (1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;

> (2) provide a safe, stable, and nonviolent environment for the child; and

14

> (3)    encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

TEX. FAM. CODE ANN. § 153.001(a). "Such policy concerns weigh heavily in assessing whether to modify geographic restrictions placed on the child's residence." *In re C.M.G.*, 339 S.W.3d 317, at 320 (Tex. App.—Amarillo 2001, no pet.). The trial court in this case cited to *Morgan v. Morgan*, which articulates factors to be considered in implementing the state's policy concerns.

> [T]he Texas Supreme Court in *Lenz v. Lenz* considered the following factors in applying Texas's best-interest standard in the relocation context: (1) the reasons for and against the move; (2) the effect on extended family relationships; (3) the effect on visitation and communication with the non-custodial parent to maintain a full and continuous relationship with the child; (4) the possibility of a visitation schedule allowing the continuation of a meaningful relationship between the non-custodial parent and child; and (5) the nature of the child's existing contact with both parents, and the child's age, community ties, and health and educational needs. 79 S.W.3d 10, 15–17 (Tex. 2002). The Court in *Lenz* also noted that suits affecting the parent-child relationship require balancing numerous factors and are "fact driven[.]"[] *Id*. at 18–19.

254 S.W.3d 485, 488 (Tex. App.—Beaumont, no pet.).

Here, we acknowledge Tally's testimony that her lot would improve if she were allowed to move to New Mexico with her husband. The prospective job opportunity waiting for her there would provide financial benefits, which C.R.J. would reap. Tally testified that the child's maternal grandparents could visit the child and that the child could maintain his relationship with Jester though telephone communications and visitation during extended breaks from school. If allowed to move, Tally testified that C.R.J. would go to a school with aftercare programs and a gifted and talented program. She planned to live with Gann in a two bedroom, two bathroom apartment in a nice neighborhood.

15

However, the move would remove Jester from the child's daily life and would create difficulty in facilitating visitation. Tally approximated that C.R.J. could visit Jester during extended breaks from school—a period of time which Tally admitted would not provide sufficient visitation for her. When asked if she would pay for C.R.J. to travel to Jester, Tally testified, "I think that kind of travel time would be pretty strenuous on a six-year-old." Due to Jester's work schedule, visitation was sporadic, and on the whim of the employer as work became available. Jester was able to arrange last-minute visits in Atlanta with C.R.J. to make up for scheduled visitation missed due to his employment, but he would no longer be able do so if the child was relocated 1,042 miles away. Tally also admitted that the child would not be able to see his extended family as often. The evidence suggests that this would negatively impact C.R.J. since he currently sees his extended family members daily or weekly due to their close relationship and current close proximity to one another.

Although Tally had chosen a school for C.R.J. in New Mexico, she testified, "Obviously if you compare schools, any state really besides Texas, Texas school systems are just better in general than most other places." In an interview conducted during a social study, C.R.J. stated that he played "T-ball and soccer,[11] liked his school, and "describe[d] himself as a good student." C.R.J., who had lived in Atlanta, Texas, since birth, had no ties to New Mexico other than his step-father.

"The Texas Family Code grants trial judges vast power and broad discretion over many important matters." *Moore v. Moore*, 383 S.W.3d 190, 194 (Tex. App.—Dallas 2012, pet.

---

[11]C.R.J.'s soccer team was coached by his maternal grandfather.

16

denied).  We are mindful that "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal."  *P.M.G.*, 405 S.W.3d at 410 (quoting *A.L.E.*, 279 S.W.3d at 427)).  "We consider only the evidence most favorable to the trial court's ruling and will uphold its judgment on any legal theory supported by the evidence."  *Id.* (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)).  "We, therefore, defer to the trial court's judgment in matters involving factual resolutions and any credibility determinations that may have affected those resolutions."  *Id.* (citing *George v. Jeppeson*, 238 S.W.3d 463, 468 (Tex. App.—Houston [1st Dist.] 2007, no pet.)).

Considering the record in this case, we conclude that the evidence provided ample support for the trial court's imposition of a geographical limitation on Tally's right to designate C.R.J.'s primary residence.  *See C.M.G.*, 339 S.W.3d at 320.

### III.    Conclusion

We affirm the trial court's judgment.


                                          Jack Carter
                                          Justice


Date Submitted:      December 3, 2013
Date Decided:        January 17, 2014

17